(No. 36435.—

THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* JOHN M. EVANS, Plaintiff in Error.

*Opinion filed January 23, 1692.*

ROBERT H. JONES, of Peoria, for plaintiff in error.

WILLIAM G. CLARK, Attorney General, of Springfield, and ROBERT W. McDONALD, State's Attorney, of Urbana, (FRED G. LEACH, Assistant Attorney General, and ROBERT J. WAALER, and ANDREW STECYK, Assistant State's Attorneys, of counsel,) for the People.

Mr. JUSTICE SCHAEFER delivered the opinion of the court:

John M. Evans, the defendant, was found guilty of burglary and larceny after a jury trial in the circuit court of Champaign County, and was sentenced to the penitentiary for a term of not less than ten years nor more than life. Upon this writ of error his principal contentions are that the indictment was insufficient in law, that his guilt was not proved beyond a reasonable doubt, and that the court erred in giving certain instructions tendered by the State and in refusing to give other instructions which he requested.

The indictment charges that the defendant broke into "the store building of Lewis Wells," and he contends that it is defective in that it does not allege that the store broken into was the property of Lewis Wells, or of anyone else. This contention was answered in *People* v. *Wolf,* 334 Ill. 218, 220, where it was said: "The plain meaning of the words 'a barn of one Everett Steele,' is that it is a barn belonging to or the property of Everett Steele." (See also *People* v. *Kreisler,* 381 Ill. 453; *Smith* v. *People,* 115 Ill. 17.) The premises involved are effectively identified, and the rights of the accused in this respect were fully protected. *People* v. *Stewart,* 23 Ill.2d 161, 168.

The record shows that about 4 :00 A.M. on the morning of April 20, 1960, police officers of the city of Pekin first trailed the car in which defendant was a passenger for several blocks, then stopped it and asked to see the license of the driver, James D. Scott, who was wanted for attempted murder. The officers asked Scott to drive to the

police station, which he agreed to do, and they followed. After a stop at a traffic signal, Scott suddenly accelerated to a high speed, drove for a few minutes with the police in pursuit, and then jumped out of the car as it turned a corner. The defendant brought the car safely to a stop, and was arrested by the officers.

The car belonged to Scott's wife. The ignition key did not open the lock on the trunk of the car, and the defendant had no key that would open it. Ultimately the police officers got into the trunk through the back seat, and a number of burglar tools and 66 cartons of cigarettes were discovered. That same morning a newsboy found a money bag containing over $330 at the intersection where Scott had jumped out of the car.

Shortly thereafter, it was discovered that a grocery store belonging to Lewis T. Wells in St. Joseph had been burglarized, and that a substantial sum of money and a number of cartons of cigarettes were missing. A safe had been moved and its back "peeled" off, and there was testimony to the effect that it would have required two men to move it. The evidence established that the cigarettes found in the trunk of the car were taken from Wells's store.

The defendant and Scott were jointly indicted for burglary and larceny. When the case came on for trial, Scott was incarcerated in Indiana and the defendant was tried alone. At the trial, the defendant denied that he had participated in the crime. He testified that he had an early supper at home and then went to a tavern where he played cards for some time. About midnight, accompanied by one of the card players, he went to another tavern. Scott came into that tavern about 3:00 A.M., and the defendant left with him about an hour later. Shortly thereafter, they were arrested. The defendant's testimony was corroborated by the testimony of his mother, of one of the card players and by the bartender and several patrons at the second tavern who testified to defendant's presence there and his meeting

14

with Scott. These witnesses testified that the date was fixed in their minds because they read of the defendant's arrest in the newspaper the following day.

On rebuttal, the State offered the testimony of two Pekin police officers who had sought a meeting with the defendant while he was at large on bail before his trial. They testified that in the course of their conversation with him he said that Scott was a "psycho," and that he had asked Scott to dump the cigarettes because they had the money. Some of the statements attributed to the defendant in this conversation could have been interpreted as admitting participation in the burglary, and this evidence was apparently offered for that purpose. Why it was withheld upon the State's original case and offered upon rebuttal is not explained in the record.

The defendant strongly urges the evidence does not establish his guilt beyond a reasonable doubt. An analysis of the evidence shows that the only evidence tending to link the defendant with the burglary was the property found in the trunk of the car and the rebuttal testimony of the officers concerning their conversation with the defendant.

In order to be of any probative value, possession of stolen property must be recent and exclusive. (*People* v. *Meyering,* 345 Ill. 598.) We are of the opinion that the facts in this case do not support the conclusion that the defendant was in possession of the stolen goods. When Scott and the defendant were first stopped by the police, the defendant was not driving the car, the car did not belong to him, and he had no key which would open the trunk. The situation here is similar to that in *People* v. *Abrams,* 360 Ill. 594, where the State relied upon a theory of possession of recently stolen property to sustain the conviction. We pointed out that the evidence showed only that the defendant was riding as a passenger in a recently stolen automobile and held that this was insufficient to show that the defendant was in possession of the car. Here too, the

evidence shows no more than that the defendant was a passenger in a car in which stolen property was later found. What was said with reference to a similar situation is pertinent here: "It is not shown that the plaintiff in error had any connection with the car or the tires except as a passenger in the car, without any control over it or its contents." *People* v. *Bullion*, 299 Ill. 208, 213.

We therefore conclude that the fact that stolen property was found in the car is not evidence of defendant's guilt. This leaves only the disputed testimony that defendant made certain admissions to the police while he was at large on bail. Opposed is the uncontradicted testimony of the defendant and four other witnesses that the defendant was in Pekin at the time the burglary took place in Champaign County. While normally the question of the whereabouts of the defendant at the time of the crime is a question for the jury, yet where from the entire record there is a reasonable doubt as to the guilt of the accused, a judgment of conviction will not be permitted to stand. (*People* v. *McGee*, 21 Ill.2d 440.) This record does not establish the defendant's guilt beyond a reasonable doubt and the judgment of conviction must be reversed. It appears that the State introduced all of the evidence available to it and would be unable to produce any new evidence upon a second trial. Under these circumstances, the cause will not be remanded for a new trial.

*Judgment reversed.*