**People of the State of Illinois, Plaintiff-Appellee, v. Isaiah Brown, Defendant-Appellant.**

Gen. No. 10,946.

Fourth District.

March 6, 1969.

Nicholas J. Neiers, of Decatur, for appellant.

Basil G. Greanias, State's Attorney of Macon County, of Decatur (Frederick P. Erickson, of counsel), for appellee.

SMITH, J.

The defendant was convicted by a jury of burglary and sentenced to the Illinois State Penitentiary for a term of not less than 10 nor more than 20 years. This is an appeal from that conviction in which the defendant asserts that the following error was committed: (1) by

the trial court in refusing to suppress evidence obtained in an alleged illegal search of the automobile in which the defendant was riding, (2) the State failed to prove the defendant's guilt beyond a reasonable doubt and (3) the jury was improperly instructed.

■ ■ Before reaching these errors, a preliminary question is raised; i. e., whether the defendant had an adversary counsel on his motion for new trial. The public defender represented the defendant in the trial and filed a motion for new trial alleging nine points. When this motion was argued, trial counsel stated "I have gone back through this record several times since the trial and since the first pretrial hearing on motion to suppress evidence. I want to say especially to the defendant in this case that it is my opinion there is no grounds for a new trial here. I want further the record to show that I am not going to prostitute my profession by belaboring the court with misrepresentations concerning evidence in this case, so I submit we have filed this motion for a new trial and I am going to ask the court to rule upon the motion on his memory of evidence in this case." Defendant cites Anders v. State of California, 386 US 738, 18 L Ed2d 493; People v. Jones, 38 Ill2d 384, 231 NE2d 390, which the State's Attorney dismisses with the suggestion that these cases relate to counsel on appeal and do not relate to this case except by analogy. Suffice it to say that a motion for new trial is historically necessary to preserve some errors on appeal and we think it is not even debatable but that the rule of advocacy applies to trial practice. People v. Craig, 40 Ill2d 466, 240 NE2d 588; People v. Slaughter, 39 Ill2d 278, 235 NE2d 566. Trial counsel did not pursue the appeal and present counsel was appointed to prosecute it. In this court, present counsel raises three of the same points which were raised in the motion for new trial and, in addition, the point we now discuss.

Anders has been the spawning ground of adversary representation in appeals as a matter of right. Its beneficent objectives in those cases where the alleged error is patent, substantial or fairly debatable cannot be denied. Its unfortunate by-product has been all too frequently to engage court and counsel in a time-consuming academic exercise in a legal and a factual vacuum. Just how candor of counsel on factual or legal issues presented by a record should be condemned rather than commended escapes us. Counsel evaluated the merits of the motion. He raised in that motion the alleged errors now argued in this court. There is no indication that there are other errors not raised in the trial court. New counsel on appeal has been properly appointed and has reviewed the record. Under such circumstances, we cannot say that the defendant has not been fairly, adequately and honestly represented in both the trial court and here. We turn now to the errors assigned.

■ Defendant's motion to suppress evidence was denied. The evidence was some fifteen guns obtained from the trunk of the car in which the defendant was riding and one obtained from under the seat. Defendant and four others were riding in a car in Robertson, Missouri. The car was driven by one James Mills. A police officer in that city testified that he noticed the car had no license plates. He followed it with red lights on and siren blowing. The car increased its speed, began weaving, narrowly avoided two pedestrians, and turned into a side street. He was able to stop it only by forcing it to the curb. When stopped, the driver had an expired driver's license. The driver stated the car belonged to his brother-in-law, the other occupants stated that it had been borrowed from a friend. Four of the five occupants of the car were from Decatur, Illinois. Defendant's witnesses testified that there was a sticker on the car indicating that it was operating under a permit. The officer asked to see in the trunk; the evidence

is in dispute whether the driver-Mills opened the trunk or the officer did it. In the trunk fifteen guns were found identified with the burglary. The officer testified that the driver was under arrest before the search. Mills and the defendant testified otherwise. They stated that the car did not speed up and that they were not avoiding the officer. The credibility of the witnesses is best determined by the trial court who saw and observed them testify. In our judgment this case is controlled by the principles stated in People v. Brown, 38 Ill2d 353, 231 NE2d 577, where the facts are strongly similar other than that the car here was stopped at 1:30 p. m., while in Brown it was stopped at 1:30 a. m. for a traffic violation. In Brown, it is stated at p 358, 231 NE2d 577, 579:

"It is the duty of police officers when confronted with circumstances giving an appearance of criminal activity to investigate in an effort to determine whether such criminal activity, in fact, exists. This court has sustained such searches, even after the defendant has been picked up as a mere traffic law violator, where the circumstances reasonably indicate that a more serious crime has been committed. People v. Thomas, 31 Ill2d 212, 201 NE2d 413; People v. Faginkrantz, 21 Ill2d 75, 171 NE2d 5."

We think a reasonably alert police officer under the circumstances here recited would reasonably believe that he was dealing with more than a mere traffic violator, and that the search was not unreasonable. People v. Zeravich, 30 Ill2d 275, 195 NE2d 612; People v. Thomas, 31 Ill2d 212, 201 NE2d 413. The trial court did not err in denying the motion to suppress.

■ The defendant objects to People's Instruction No. 12 which in substance informed the jury that recent unexplained, exclusive possession of stolen property by

481

defendant may raise an inference of his guilt sufficient to warrant conviction in the absence of other facts and circumstances and evidence which leave in the minds of the jury a reasonable doubt as to guilt. This instruction stated: "Possession may be exclusive even though joint." It is urged that there is no evidence in this record to establish either joint possession or individual exclusive possession in the defendant. People v. Evans, 24 Ill2d 11, 179 NE2d 657, is cited as authority and if the validity of this instruction depended solely upon the evidence in Missouri, it could well apply and the instruction would thus be inapt. In People v. Evans, supra, the evidence indicated that the defendant neither owned the car, was driving the car nor had a key which would unlock the trunk. Under such circumstances, possession sufficient to infer guilt was not established. In this case, however, the testimony of Mills that the defendant went down a railroad track and came back with the guns in a tote bag certainly shows exclusive possession at that time if believed. It is not the province of this court to determine on this issue whether his testimony should or should not be believed. It was evidence which warranted the giving of the instruction and it was not error to do so.

■■ The defendant further contends that his conviction rests upon circumstances and the unbelievable testimony of his codefendant-Mills. And this is true. Mills pleaded guilty to a lesser crime than burglary and testified on behalf of the People. His testimony on the trial is somewhat at variance with the statements previously given to the Missouri Police. If believed, however, by the jury, it indicated that Mills was driving the defendant to work and on the way back, Brown indicated that he had found something. They stopped at the railroad tracks and Brown went after the objects so found. He returned with a tote sack full of the guns which were offered in evidence and which were beyond

dispute the fruits of the burglary. Later Brown, Mills, Tate, a friend of theirs, and Ragsdale, Brown's girl friend, all headed for St. Louis in a car belonging to the brother of Mills. Both Ragsdale and Tate had been made original defendants, but prior to the trial of this case, were dismissed. They testified on behalf of the defendant. Brown had a previous conviction and admitted to it in the courtroom and at the time of the events in question was living with Natalie Ragsdale. Mills also testified that they discussed the disposition of the guns and talked about a trip to St. Louis for that purpose. Brown denied all of this testimony and also furnished an alibi covering the night in question except from 5 o'clock in the afternoon until about 9:30 p. m. It is here argued that since the burglarized place was located close to three or four taverns in a lighted area that the burglary just simply couldn't have taken place at this time without somebody observing it. The credibility of these witnesses and the weight to be given their respective testimony is primarily and fundamentally that of the jury. It is difficult for us to appraise their testimony from the cold record. We see no reason to disturb the jury's verdict.

For the reasons here indicated, we are of the opinion that the defendant had a fair trial and that his guilt was established beyond a reasonable doubt. The judgment of the trial court is accordingly affirmed.

Affirmed.

TRAPP, P. J. and CRAVEN, J., concur.