THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. KELVIN JEROME HOUSTON, Defendant-Appellant.

Fourth District   No. 4—85—0805

Opinion filed August 28, 1986.

GREEN, J., dissenting.

Daniel D. Yuhas and Allen H. Andrews, both of State Appellate Defender's Office, of Springfield, for appellant.

Jeffrey K. Davison, State's Attorney, of Decatur (Kenneth R. Boyle, Robert J. Biderman, and David E. Mannchen, all of State's Attorneys Appellate Prosecutor, of counsel), for the People.

JUSTICE WEBBER delivered the opinion of the court:

Defendant was convicted of theft over $300 and sentenced to one year of probation. Several reports of violations of probation were filed, including a fourth report of violation of probation alleging that defendant committed the offenses of burglary and theft with a prior theft conviction and requesting that defendant's probation be revoked. A hearing on the fourth report was filed at which the following testimony was received.

Mark Kaylor, an employee of Sun Control, testified that on the afternoon of July 19, 1985, Keith Box, accompanied by defendant and two other men, came into the Sun Control store in Decatur and inquired about sunroofs and window tint. Although two sunroofs were on display and accessible to the public, Kaylor stated that he did not see defendant handle those sunroofs while he was inside the store. Kaylor spent most of his time talking to Keith and he did not pay much attention to the sunroofs or defendant.

Michael Lewis, an employee of Sun Control, testified that when he closed the store on Friday, July 19, 1985, all of the windows and doors were secured. When he returned the following morning, a window had been broken and the two sunroofs on display and a box of automobile window tint were missing. Lewis stated that no one had permission to take those items.

Lewis testified that on September 20, 1985, he saw that Keith's car had window tint on its side windows. Those windows had not been tinted five days earlier when Keith had his rear window tinted at Sun Control. The side windows were tinted with the same material which

had been taken from Sun Control.

Teresa Scheuster, Keith's girlfriend, testified under a grant of immunity. She testified that on the evening of July 19, 1985, she, Keith, defendant, and Anita Manley went to Springfield. They returned to Decatur at 2:15 a.m. on July 20, 1985. She dropped off defendant at his home, and she later dropped off Keith at his mother's house.

In the early evening hours of July 20, 1985, Scheuster was at a park in Decatur when Keith and defendant arrived in Keith's car. Two sunroofs were in the trunk of Keith's car. Defendant offered a sunroof to Scheuster as a gift, but she refused. The sunroofs were then put in the trunk of her car.

On July 26, 1985, Scheuster saw Keith and defendant at the home of Keith's brother, James Box. Keith and Scheuster left the house of James and went to the house of Roy Bates. She saw Keith remove the sunroofs from Bates' house and place them in the trunk of Keith's car. They returned to James' house, and Keith placed the sunroofs in the living room while James was present.

On July 27, 1985, Scheuster picked up Keith at James' house. Keith brought the sunroofs from James' house and placed them in the trunk of Scheuster's car. After Scheuster and Keith drove around town, they picked up defendant. They were then stopped by the police. Scheuster hid the key to the trunk under the carpet inside the car. She told the police that they could search her car; however, she stated she did not have a key to the trunk. The police discovered the sunroofs in the trunk of Scheuster's car.

Scheuster denied any involvement in the burglary of Sun Control and theft of the sunroofs and window tint.

James testified that he had seen the sunroofs at Manley's house on July 27, 1985. On that date defendant offered to sell the sunroofs to James, and, after James refused the offer, defendant asked James whether he knew anyone who might want to buy the sunroofs. James stated that he had not seen the sunroofs on any other occasion.

Detective George Lebo testified that on July 27, 1985, he stopped Scheuster's car as it was being driven by Keith and occupied by Scheuster and defendant. Detective Lebo discovered two sunroofs in the trunk of Scheuster's car. On one sunroof Detective Lebo found defendant's left thumbprint.

Detective Lebo interviewed defendant on July 27, 1985. Defendant stated that he was unaware that the sunroofs were in Scheuster's car. He told Detective Lebo that although he had seen the sunroofs a week earlier at Sun Control, he did not touch the sunroofs at that time.

Detective Lebo also interviewed James on July 28, 1985. James denied having ever seen the sunroofs.

Officer Michael Applegate testified that he interviewed defendant on July 27, 1985. Defendant told Officer Applegate that while at Sun Control on July 19, 1985, he had handed each of the sunroofs on display to Keith. After being told by defendant that he had handled the sunroofs at Sun Control, Officer Applegate informed defendant that one of his fingerprints had been found on a sunroof. Defendant denied ever attempting to sell the sunroofs.

Defendant testified on his own behalf. He stated that on July 19, 1985, he went to Sun Control with Keith and Casey Wright. While at Sun Control he handed a sunroof to Keith so that he could look at it. Later that night defendant, Keith, and Scheuster went to Springfield. They returned to Decatur at approximately 3 or 4 a.m. the following morning. Defendant was dropped off at his home, and he went to bed. Defendant denied entering Sun Control that night, and he also denied ever taking anything from the business.

Defendant also denied offering to give a sunroof to Scheuster and offering to sell a sunroof to James. He stated that he did not know that the sunroofs were in the trunk of Scheuster's car when they were stopped by the police on July 27, 1985. Defendant admitted that he originally told Detective Lebo that he had not touched the sunroofs while at Sun Control.

Following the hearing the court found that the allegations of the fourth report were proved by a preponderance of the evidence. Defendant's probation was revoked, and he was sentenced to two years, six months' imprisonment. Defendant was given credit for time served; however, the court refused to give defendant credit for the time spent on probation prior to his arrest.

Defendant filed a timely notice of appeal. On appeal defendant argues that the State failed to prove by a preponderance of the evidence that he committed the offenses of burglary and theft. We agree and, accordingly, we reverse the judgment below.

■ A criminal offense or other violation of probation which serves as a basis for revocation of probation need be proved only by a preponderance of the evidence. (*People v. Crowell* (1973), 53 Ill. 2d 447, 292 N.E.2d 721; *People v. Newell* (1982), 105 Ill. App. 3d 330, 434 N.E.2d 349.) It is the function of the trier of fact to determine the credibility of the witnesses, the weight to be given to their testimony, and the inferences to be drawn from the evidence. (*People v. Hoga* (1982), 109 Ill. App. 3d 258, 440 N.E.2d 411.) The trial court, as the trier of fact, is in a position superior to a reviewing court for as-

sessing the demeanor and the credibility of the witnesses. (*People v. DeWitt* (1978), 66 Ill. App. 3d 146, 383 N.E.2d 694.) Therefore, the decision of the trial court should not be reversed merely because the evidence is conflicting. (*People v. Crowell* (1973), 53 Ill. 2d 447, 292 N.E.2d 721.) Only when that decision is contrary to the manifest weight of the evidence will a reviewing court substitute its judgment for that of the trial court. 53 Ill. 2d 447, 292 N.E.2d 721; *People v. Wadelton* (1980), 82 Ill. App. 3d 684, 402 N.E.2d 932; *People v. DeWitt* (1978), 66 Ill. App. 3d 146, 383 N.E.2d 694.

In support of his argument that the trial court's decision is against the manifest weight of the evidence, defendant cites *People v. Housby* (1981), 84 Ill. 2d 415, 420 N.E.2d 151, *cert. denied* (1981), 454 U.S. 845, 70 L. Ed. 2d 131, 102 S. Ct. 160, and *People v. Akins* (1984), 128 Ill. App. 3d 1009, 471 N.E.2d 1003. In *Housby* our supreme court held that exclusive and unexplained possession of recently stolen property is insufficient, standing alone and without corroborating evidence, to prove that a person committed the offense of burglary. The court held that guilt of burglary may be inferred from the defendant's possession of stolen property only if:

> "(i) [T]here was a rational connection between his recent possession of property stolen in the burglary and his participation in the burglary; (ii) his guilt of burglary is more likely than not to flow from his recent, unexplained and exclusive possession of burglary proceeds; and (iii) there was evidence corroborating [his] guilt." (*People v. Housby* (1981), 84 Ill. 2d 415, 424, 420 N.E.2d 151, 155.)

In *Akins* we held that the three-pronged test of *Housby* should be applied in theft cases where the State seeks to prove defendant's guilt by the fact of his possession of stolen property.

The State argues that the *Housby* test is not applicable to the instant proceedings. The State argues that because the burden of proof is less stringent in a probation revocation proceeding, *Housby* does not apply. In support of its argument, the State cites *People v. Lee* (1984), 128 Ill. App. 3d 937, 471 N.E.2d 988. In *Lee* the Second District noted that the inference of guilt from the exclusive and unexplained possession of recently stolen property explained in *Housby* is not applicable to a probation revocation proceeding since *Housby* and other cases relying on *Housby* dealt with the reasonable doubt standard. We disagree. *Housby* is relevant to a probation revocation proceeding. Although the burden of proof is less stringent in a probation revocation proceeding, the three-pronged test set forth in *Housby* still must be met when a finding that a person committed the offense of

burglary or theft is based on an inference arising from the exclusive and unexplained possession of recently stolen property. The only difference in a probation revocation proceeding is that the three-pronged test of *Housby* need be proved by a preponderance of the evidence rather than beyond a reasonable doubt.

Having concluded that the three-pronged test of *Housby* is applicable to the instant case, we must now determine whether the requirements of *Housby* have been shown by a preponderance of the evidence. Our primary concern is that the second and third requirements of the *Housby* test have not been met.

The second prong of the *Housby* test requires that the defendant's guilt be found more likely than not to flow from his recent, unexplained and exclusive possession of stolen property. As defendant correctly argues, he was not in exclusive possession of the stolen property. The sunroofs were kept in houses and cars other than defendant's at all times mentioned. The only evidence that defendant had any control over or possession of the sunroofs was Scheuster's testimony that defendant attempted to give her a sunroof and James' testimony that defendant attempted to sell him a sunroof. We believe the credibility of these witnesses was seriously impeached. Scheuster's involvement in the transaction at issue was anything but innocent. She was testifying under a grant of immunity, and she admitted that Keith was her boyfriend at the time of both the transaction at issue and defendant's hearing. James' main concern was apparently to place the sunroofs at any place other than his own home. Contrary to Scheuster's testimony, James stated that he had not seen the sunroofs at any place other than at Manley's house on July 27, 1985. We note further that at the time the sunroofs were found, defendant was merely a passenger in Scheuster's automobile being driven by Keith, and the sunroofs were in the trunk of the car and defendant had no key to the trunk. Such evidence is insufficient to show that defendant had exclusive possession of the sunroofs, even under a preponderance of the evidence standard. (See *People v. Evans* (1962), 24 Ill. 2d 11, 179 N.E.2d 657 (noting that evidence showing that the defendant was a passenger in a car containing allegedly stolen goods in the trunk and belonging to a person other than defendant was insufficient since it was not shown that defendant had a key which would open the trunk).) The State cites *People v. Mallette* (1985), 131 Ill. App. 3d 67, 475 N.E.2d 237, for the proposition that joint possession with others can be exclusive possession for the purpose of satisfying the *Housby* test. However, we have concluded that the evidence failed to show that defendant possessed the sunroofs at all.

■ The third prong of the *Housby* test requires corroborating evidence of defendant's guilt. The only evidence which could possibly be considered corroborating evidence of defendant's guilt is his thumbprint. However, we believe that defendant's explanation of the thumbprint is reasonable and sufficient to overcome any inference which may arise from the fact that defendant's thumbprint was found on one of the sunroofs.

In sum, we conclude that the State failed to prove by a preponderance of the evidence that defendant committed the offense of burglary and theft. Although we are aware that our decision may rest on matters of credibility and the weight of the evidence, we believe that any conclusion contrary to our decision herein would be against the manifest weight of the evidence. We note also that the *Housby* test was designed to protect persons who may be in possession of stolen property as a result of being an innocent purchaser or a victim of circumstances. (*People v. Akins* (1984), 128 Ill. App. 3d 1009, 471 N.E.2d 1003.) We believe defendant to be a victim of circumstances.

For the foregoing reasons, the judgment of the circuit court of Macon County revoking defendant's probation and sentencing him to 2½ years' imprisonment is reversed.

Reversed.

SPITZ, J., concurs.

JUSTICE GREEN, dissenting:

I agree with the Second District decision in *Lee* which holds that *Housby* requirements are based on the necessity of establishing proof beyond a reasonable doubt. Although the sufficiency of the evidence here to support the trial court's decision requires careful consideration, I conclude that the decision was not contrary to the manifest weight of the evidence. Our function does not include a determination as to where the preponderance of the evidence lies. (*People v. Crowell* (1973), 53 Ill. 2d 447, 292 N.E.2d 721.) Accordingly, I would affirm.

The *Housby* court relied most heavily on the opinion of the United States Supreme Court in *County Court v. Allen* (1979), 442 U.S. 140, 60 L. Ed. 2d 777, 99 S. Ct. 2213. The *Housby* opinion explained that when a presumption in a criminal prosecution is mandatory, the inference must flow from the established fact to the presumed fact beyond a reasonable doubt. On the other hand, where such a presumption is merely permissive, a "less stringent standard" was stated to be required. (*People v. Housby* (1981), 84 Ill. 2d 415, 420, 420 N.E.2d 151,

153.) The court then explained that with the "less stringent standard" corroboration was necessary, under the doctrine of *County Court,* to satisfy the requirement of proof beyond a reasonable doubt. (84 Ill. 2d 415, 421, 420 N.E.2d 151, 154.) Thus, the *Housby* decision made clear that the corroboration prong (the third prong) of the *Housby* test is only necessary when proof beyond a reasonable doubt is required.

I agree that a rational relationship between theft and recent possession of stolen property is necessary for a probative relationship between the two to exist in any type of proceeding. I also agree that if the relationship between the possession and the theft is the only evidence that the defendant committed the theft, the relationship would have to be such that a trier of fact could reasonably conclude that the theft is more likely than not to flow from the possession. However, because proof beyond a reasonable doubt is not in issue, no special formal rule is involved. Any circumstantial evidence which tended to show that defendant was more likely to have committed the theft in issue was relevant. (*People v. Monroe* (1977), 66 Ill. 2d 317, 362 N.E.2d 295.) We need not decide whether the circumstances of defendant's alleged possession alone was enough to support the decision to revoke, because other circumstantial evidence also tended to show the likelihood of defendant's guilt.

As the majority properly states, the determination of the credibility of the witnesses and the weight to be given to their testimony was for the court as the trier of fact. (*People v. Hoga* (1982), 109 Ill. App. 3d 258, 440 N.E.2d 349.) On the basis of the evidence, the trial court could have found the following circumstances to have existed: (1) On July 19, 1985, defendant was in the Sun Control building with others and examined sunroofs and tint; (2) that night, sunroofs and tint were stolen from the store during a burglary; (3) the next evening, defendant offered to make a gift of a sunroof to Scheuster; (4) on July 27, 1985, defendant offered to sell the sunroofs to James; (5) on that day, defendant was in an automobile when some sunroofs were found in its trunk; and (6) on July 27, 1985, defendant told Detective Lebo that he had not touched the sunroofs while at Sun Control on July 19, 1985; but (7) on the same day, he told Officer Applegate that he handed the sunroofs to Keith on July 19, 1985, at Sun Control.

If defendant had offered to sell or give away the sunroofs, that would be strong evidence that he claimed to have an exclusive possessory interest in the items. He gave no explanation as to how he had acquired that possession. James testified that the offer of sale was made the night after the burglary. Defendant's presence in Sun Control, looking at sunroofs, was some indication that he had an interest

in acquiring such an item. The court, as the trier of fact, could have believed that defendant lied to at least one of the investigating officers and lied at trial. Evidence that defendant lied about significant evidentiary facts either before trial or at trial is evidence of an admission of guilt. *People v. Spaulding* (1923), 309 Ill. 292, 306, 141 N.E. 196, 202; *Lubbers v. Norfolk & Western Ry. Co.* (1983), 118 Ill. App. 3d 705, 711, 454 N.E.2d 1186, 1191, *aff'd on other grounds* (1984), 105 Ill. 2d 201, 473 N.E.2d 955; McCormick, *Evidence* sec. 273, at 808 (3d ed. 1984).

When taken together, the circumstantial evidence had sufficient strength that I do not deem a determination that defendant had committed a theft of the sunroofs to be contrary to the manifest weight of the evidence. The majority recognizes the inherent weakness in accomplice testimony. When a conviction, which must be based on proof beyond a reasonable doubt, is involved and other proof is nonexistent, that inherent weakness may, of itself, create a reasonable doubt as a matter of law. Here, the measure of proof is on the basis of whether it is more likely than not that the defendant committed the theft. Under the circumstances, the inherent weakness of the accomplice's testimony is only a weight factor for the trier of fact. It creates doubt but does not require us to overturn the decision of the judge who saw and heard the witnesses.