(No. 64168

THE PEOPLE OF THE STATE OF ILLINOIS, Appellant, v. KELVIN JEROME HOUSTON, Appellee.

*Opinion filed October 5, 1987.*

CUNNINGHAM, J., took no part.

Neil F. Hartigan, Attorney General, of Springfield, and Jeffrey K. Davison, State's Attorney, of Decatur (Roma J. Stewart, Solicitor General, and Mark L. Rotert and Judith H. Schlessinger, Assistant Attorneys General, of Chicago, and Kenneth R. Boyle, Robert J. Biderman and David E. Mannchen, of the State's Attorneys Appellate Prosecutor, of Springfield, of counsel), for the People.

Daniel D. Yuhas, Deputy Defender, and Allen H. Andrews, Assistant Defender, of the Office of the State

Appellate Defender, of Springfield, for appellee.

JUSTICE SIMON delivered the opinion of the court:

Defendant Kelvin Jerome Houston was convicted in the circuit court of Macon County of theft over $300 (Ill. Rev. Stat. 1983, ch. 38, par. 16—1) and was originally sentenced to probation for one year. Subsequently, several motions to revoke his probation were filed against him. The motion at issue here charged the defendant with burglary (Ill. Rev. Stat. 1985, ch. 38, par. 19—1) and theft by knowingly exerting unauthorized control over property with the intent to permanently deprive the owner (Ill. Rev. Stat. 1985, ch. 38, par. 16—1(a)(1)). The trial judge decided that the charge was proved, revoked the defendant's probation, and sentenced him to a term of 30 months' imprisonment. The appellate court, with one justice dissenting, reversed (146 Ill. App. 3d 982), and we granted the State's petition for leave to appeal (107 Ill. 2d R. 315).

Defendant, accompanied by Keith Box and one or two other men, visited the premises of Sun Control in Decatur on Friday, July 19, 1985, shortly before closing time. Mark Kaylor, an employee of the store, testified that Keith inquired about automobile window tint and sunroofs while the others stood by listening. Kaylor was in the office the entire time the men were present and stated that at no time did any of them handle the two sunroofs that were on display. The office is not large, and Kaylor was able to keep an eye on the roofs while talking to Keith. The defendant was four to five feet from the sunroofs during the discussion between Kaylor and Keith. Although everything was in order when Sun Control closed that evening, when the store owner arrived at 8 the next morning, a window had been broken out and the two display sunroofs and a box of window tint were missing. Two months after the burglary the

store owner observed Keith with what appeared to be some of the stolen tint on his car windows.

James Box, Keith's brother, testified that he saw the sunroofs at another person's house on the Wednesday following the burglary, that the defendant had them wrapped in towels, and that the defendant offered to sell them to him for $50. Keith was also present at the time. James denied telling a police detective that he had never seen the sunroofs or that he saw them only earlier in the week, on Saturday or Sunday.

Keith's girlfriend, Teresa Scheuster, testified under a grant of immunity. She said that on July 19 at around 5:30 p.m., she had driven to Springfield along with the defendant, Keith and another woman and returned the following morning about 2:15. She first dropped the defendant at his apartment, and then let Keith off. Around 5 or 6 o'clock on the afternoon of the 20th, she saw the defendant and Keith at a park. Keith opened the trunk of his car, and the defendant showed her two sunroofs covered with towels. The defendant asked her if she wanted one as a gift, and she declined. On July 26, Scheuster and Keith went to a third person's house, and Keith came out carrying the sunroofs and put them in the trunk of his car. He then took them to his brother James' house. The defendant was present when the roofs were placed in James' house. The following day, July 27, Keith removed them from his brother's home and put them in the trunk of Scheuster's car. Keith and Scheuster then picked up the defendant, and shortly thereafter, the police stopped the car. Although she hid the trunk key on Keith's orders, Scheuster allowed them to search the car, and the sunroofs were discovered.

Following his arrest, the defendant told Detective George Lebo that he did not know anything about the property in the car, but admitted he had looked at some sunroofs at Sun Control a week or so earlier. He denied

ever handling or touching the roofs at Sun Control. Lebo, however, matched a thumbprint on the larger sunroof to the defendant. Lebo had also interviewed James Box. James told him that he had never seen the sunroofs, but indicated that on Saturday or Sunday afternoon of the prior week, the defendant had discussed the roofs with him.

Another police officer also interviewed the defendant later on July 27. The defendant told him that he had talked to Keith Box and wanted to revise the statement he gave to Detective Lebo because he recalled that he had handled the sunroofs and that he and Keith had passed them back and forth while they were at Sun Control on July 19. This revised statement was made before the officer confronted him with the thumbprint.

The defendant testified that he had handled the sunroofs when he, Keith and another man went to Sun Control on July 19. He had returned from Springfield at 3 or 4 a.m. on the 20th and went to bed. He denied committing the burglary or attempting to sell or give away the sunroofs. At the conclusion of the defendant's testimony, the trial judge found that the charge had been proved by a preponderance of the evidence.

The appellate court believed that this court's decision in *People v. Housby* (1981), 84 Ill. 2d 415, required reversal of the trial court's finding. *Housby* formulated a three-part test for determining whether an instruction, which advised the jury in a burglary case that the defendant's guilt could be inferred from his exclusive and unexplained possession of recently stolen property, violated the due process clause of the United States Constitution. The point of the *Housby* test is to ensure that an instruction does not permit the jury in a criminal case to infer the defendant's guilt of burglary from circumstances which do not warrant such an inference. (*People v. Richardson* (1984), 104 Ill. 2d 8, 12.) The presumption

"must not undermine the factfinder's responsibility at trial, based on the evidence adduced by the State, to find the ultimate facts beyond a reasonable doubt." *County Court v. Allen* (1979), 442 U.S. 140, 156, 60 L. Ed. 2d 777, 791, 99 S. Ct. 2213, 2224.

Apart from the fact that the standard of proof is lower in a probation revocation proceeding—making it unlikely that the *Housby* factors could be imported without change into this context—nothing in the record here suggests a *Housby*-type due process concern. There was, of course, no jury instruction in this proceeding tried by a judge. Nor is there anything to show that the judge inferred the offenses merely from the defendant's possession of the sunroofs. To the contrary, when the defendant requested a directed verdict on the basis that, under *Housby*, mere possession of recently stolen items was insufficient to show that he committed burglary, the judge expressly rejected the suggestion that the evidence only showed such possession.

The appellate court majority's reliance on *Housby* was therefore misplaced. The question here is not whether the defendant has been deprived of due process (see *People v. Richardson* (1984), 104 Ill. 2d 8, 13), but whether the trial judge's finding that the defendant violated his probation is against the manifest weight of the evidence. *People v. Cooper* (1977), 66 Ill. 2d 509, 514.

The appellate court held that the evidence did not show that the defendant possessed the sunroofs at any time. It rejected the testimony of James Box and Scheuster, who said defendant offered to transfer the property to them, on the ground that their credibility "was seriously impeached." (146 Ill. App. 3d 982, 987.) The appellate court also felt that the defendant's explanation of how his thumbprint came to be on one of the stolen items was reasonable and overcame any inference of guilt which the thumbprint would otherwise create.

The appellate court "believe[d] defendant to be a victim of circumstances." 146 Ill. App. 3d 982, 988.

The appellate court exceeded its authority in reweighing the evidence and rejudging the credibility of the witnesses. "The trial judge, who is in a superior position to weigh the evidence and to judge the credibility of the witnesses, was entitled to draw reasonable inferences and reach conclusions to which the evidence lent itself. *** The mere fact that a reviewing court might have reached a different conclusion had it been the trier of fact is insufficient to serve as a basis for reversal." *People v. Cooper* (1977), 66 Ill. 2d 509, 514.

James Box apparently lied to the police when he initially said that he had never seen the sunroofs, and his original statement differed from his testimony concerning when the defendant discussed the roofs with him. James' and Scheuster's actions were not above reproach and both had personal interests which aligned them to Keith rather than the defendant. Scheuster, however, was given immunity for testifying against both the defendant and Keith, and her testimony here was highly inculpatory of Keith as well. In any event, the trial judge had ample opportunity to assess the credibility of all the witnesses and obviously believed Mark Kaylor, James Box, and Scheuster instead of the defendant. The appellate court erred in rejecting the testimony of the State's witnesses.

On the basis of the evidence introduced, the trial judge could have found that the defendant, Keith Box and at least one other man visited Sun Control shortly before closing on July 19, that Keith discussed sunroofs with Kaylor while the defendant listened, and that the defendant never touched either sunroof at that time. Sometime before 8 o'clock the next morning a break-in occurred, and the two display sunroofs and a box of window tint were taken. The defendant had no substanti-

ated alibi for his whereabouts between 2 or 3 o'clock on the morning of July 20 and the time the burglary was discovered. Later in the day, defendant offered to give Scheuster one of the sunroofs, and sometime that week he offered to sell them to James Box. The defendant was present when the sunroofs were transferred from Keith's car to James' house on July 26. The defendant was a passenger in Scheuster's car when police apprehended them the next day and found the sunroofs in the trunk. The defendant's thumbprint was on one of them. The defendant's claim that he had passed the sunroofs back and forth with Keith Box during the visit to Sun Control was a reversal of his previous statement to police, was made only after consulting with Keith, and was contradicted by the Sun Control employee. The trial judge therefore would have been justified in concluding the defendant was lying about his role in the incident.

Contrary to the defendant's argument, this evidence does not merely show that he possessed the stolen sunroofs. It showed in addition that he was present at the scene just hours before the burglary occurred, attempted to dispose of the property as if he had as good a claim to it as Keith Box, and lied to police about the events of July 19. Given the testimony that the defendant did not touch the roofs on July 19 and the fact that the sunroofs were wrapped with towels when they were observed by James, Scheuster and Detective Lebo, the trial judge could have also concluded that the defendant's thumbprint could only have been made at the time of the burglary. Despite the absence of direct evidence that he broke into the store, we believe these circumstances were sufficient to permit the trial judge's finding. While a different result might obtain in a criminal trial, in this probation revocation proceeding the judge only had to be persuaded by a preponderance of the evidence that the

defendant committed the burglary. *People v. Crowell* (1973), 53 Ill. 2d 447.

The same evidence also supported a finding of theft by the knowing exercise of unauthorized control over property with intent to permanently deprive the owner. The motion to revoke probation charged the defendant with theft on or about July 27, the day he, Keith Box and Scheuster were stopped by police. Although the defendant does not allude to it in this court, he argued at trial that there was no evidence that he personally exercised control over the sunroofs on that date. The State responded, and we agree, that the exertion of control during the previous week was sufficient to sustain the charge and that the variance was not fatal. *People v. Alexander* (1982), 93 Ill. 2d 73.

The defendant suggests that Keith Box exerted more control than he did over the stolen items. While this may be true, it does nothing to avail the defendant. The fact that Keith may have also been guilty of burglary and theft does not exonerate the defendant. For the reasons stated, the judgment of the appellate court is reversed and that of the circuit court of Macon County is affirmed.

*Appellate court reversed;*
*circuit court affirmed.*

JUSTICE CUNNINGHAM took no part in the consideration or decision of this case.