Filed November 20, 2006

No. 1-05-1643

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County. |
| | ) | |
| v. | ) | No. 03 CR 11974 |
| | ) | |
| WILLIAM NATAL, a/k/a Samuel Natel, | ) | Honorable |
| | ) | Eddie A. Stephens, |
| Defendant-Appellant. | ) | Judge Presiding. |

## MODIFIED ORDER UPON DENIAL OF PETITION FOR REHEARING

JUSTICE ROBERT E. GORDON delivered the opinion of the court:

Following a bench trial, defendant William Natal was convicted of residential burglary and sentenced to 10 years' imprisonment as a Class X offender based upon his criminal history. He was also ordered to submit blood specimens to the Illinois State Police for genetic analysis pursuant to section 5-4-3 of the Unified Code of Corrections (Code). 730 ILCS 5/5-4-3 (West 2002).

On appeal, defendant contends that the State failed to prove him guilty beyond a reasonable doubt when the only evidence against him was his possession of some of the proceeds from the burglary. Defendant also contends that the compulsory extraction of his blood and perpetual storing of his DNA profile pursuant to section 5-4-3 of the Code violates his fourth amendment right to be free from unreasonable searches and seizures. We reverse.

At trial, Joseph Fuentes testified that at about 9 a.m. on May 17, 2003, he and his girlfriend,

Consuelo Canaday, left their second-floor apartment, locking the lock on the doorknob, but not the deadbolt. When they returned home at noon, they observed a hammer and a screwdriver on the doormat in front of their apartment door, saw that the door had been damaged, and then found that the deadbolt on the door had been locked. Upon entering the apartment, Fuentes saw that their home had been ransacked, with the mattress flipped over, drawers and cabinets open in every room, and their clothes removed from the closet and dresser and thrown on the floor. In the living room, their VCR and DVD player had been disconnected from the television and moved to the dining room table, and their patio door was open. Fuentes testified that the patio has a stairway leading to the ground, and someone could ascend the stairway and enter the apartment. There is also a rear door to the building that leads to a hallway that goes to Fuentes' apartment door.

Fuentes further testified that he went outside on the patio and did not see anyone in the alley, but then saw defendant outside of his property standing on the sidewalk on Milwaukee Avenue about 20 feet away from the building. Defendant was holding and looking into two pillowcases that had been removed from Fuentes' bed. Fuentes told Canaday that the burglar was downstairs and to call the police. He went downstairs, grabbed a pipe that was in the stairwell, exited the building and confronted defendant on the sidewalk. Fuentes asked defendant why he was going through his property, and defendant replied "[i]t wasn't me. The guy just ran away," and pointed over Fuentes' shoulder. Fuentes told defendant not to go anywhere and that the police were on their way. Defendant left the pillowcases on the sidewalk near the apartment building and began walking backwards. He then placed his hand inside his jacket, said that he had a gun and threatened to shoot

2

Fuentes, but Fuentes did not believe him because he then removed his hand from his jacket. The arresting police officer interviewed Fuentes and testified Fuentes never told him that he was threatened with a gun.

Fuentes testified that defendant continued walking backwards away from the apartment, and Fuentes slowly followed him. Fuentes then saw defendant remove a black item from his back pocket and drop it behind a dresser that was on display on the sidewalk in front of a furniture store. Minutes later, police arrived and arrested defendant. When police searched defendant, Fuentes saw them remove from his back pocket a green padlock with a ladybug sticker on it that belonged to Canaday and had been in their apartment. He also saw police recover the item defendant discarded behind the dresser, and recognized it as his black glove. Inside the glove were quarters and a gold necklace. Fuentes testified that he had never seen defendant before the day of the burglary and never gave him permission to enter his apartment or remove any items from therein.

Chicago police officer James Wodnicki testified that he responded to a call at Fuentes' apartment and when he arrived, he saw defendant arguing with Fuentes about 200 feet south of the apartment building. After speaking with Fuentes, Officer Wodnicki arrested defendant, and during a custodial search, he recovered a green padlock and a watch from his back pocket. He also recovered from the scene a glove containing loose change. The officer observed other property items on the sidewalk near defendant and saw pillowcases on the ground in front of a dollar store, which was near the apartment building.

In support of his motion for a directed finding, defense counsel argued that the State had not

3

proven the elements of residential burglary and that the court could not presume that defendant committed the burglary merely because he was in possession of items that were allegedly taken during the offense. The trial court found that, based on all of the evidence that had been presented, defendant's possession of the property was unexplained. In denying defendant's motion, the court stated that "defendant's possession of these items proximate to the victim's house all militate toward – in this court's opinion at this stage of the proceedings – the conclusion that the State has shown a prima facie case."

Defendant presented testimony from Chicago police evidence technician Roy Fondren, who testified that on the afternoon of May 17, 2003, he recovered eight latent fingerprint lifts from items inside Fuentes' apartment that were believed to have been handled by the burglar. Officer Fondren testified that he did not make any comparisons of these prints, but submitted them for analysis. The parties then stipulated that certified fingerprint examiners Leo Cummings and Willie Harris examined those fingerprints and found that they did not match the fingerprints of defendant.

Defendant testified that on the date in question, he was walking down the sidewalk and noticed a gold chain, a locket, money and a glove on the ground. He picked up these items and placed them in his pocket, and then began looking inside some bags (pillowcases) that were on the ground. Defendant testified that the sidewalk was busy with people at the time. Fuentes then appeared holding a pipe, startled defendant, and said that the items belonged to him. Defendant testified that he began walking backwards because Fuentes threatened him with the pipe. He also testified that the watch the police recovered from him actually belonged to him. Defendant denied

4

that he ever entered Fuentes' apartment, that he threatened Fuentes, or that he told him that someone who ran away had taken the property. Defendant also acknowledged that he was convicted of theft and possession of a controlled substance in 2001, and attempted residential burglary in 1998.

In closing arguments, defense counsel asserted that defendant had provided a reasonable explanation for his possession of Fuentes' property. Counsel further argued that Fuentes' testimony was impeached, which made his credibility questionable. Counsel maintained that the State merely proved that defendant was in possession of some proceeds from the alleged burglary and that it failed to prove that he ever entered the apartment building.

The court stated that it had heard all of the evidence and observed the demeanor of the witnesses who testified. It then detailed the testimony of Fuentes and defendant. The court noted that the defense's theory was that, if defendant had stolen the property, he would have left the area, but the court found that there was no explanation as to why defendant would pick up property that did not belong to him and not leave the area. The court also noted that the State had argued that defendant's unexplained possession of the property was sufficient to support a finding of guilt. The court found that defendant's testimony was not credible and stated that the court did not have to accept his explanation, especially in light of his criminal background. Even though the testimony of both defendant and Fuentes had been impeached, the court was not going to disregard Fuentes' entire testimony.

The trial court then stated that there was other evidence which was "circumstantial in terms of the residential burglary." It noted that defendant allegedly dropped a glove behind a piece of

furniture on the street, which defendant denied. The court stated that the most powerful evidence was defendant's unexplained possession of the property, and that it was "a close case," but found that the case law supported a conviction and found defendant guilty of residential burglary. The court noted that the State presented case law which held that recent unexplained exclusive possession of stolen property raises an inference of guilt, which, according to those cases, was sufficient to support a guilty finding.

The case law that the trial court relied on was *People v. Curtis*, 116 Ill. App. 2d 298 (1969). In the *Curtis* case, the trial court gave a jury instruction which was found proper and which stated:

> "'The Court instructs the jury that the exclusive possession, shortly after the commission of burglary, of stolen property, the proceeds of the crime, if unexplained, may of itself raise an inference of guilt of the person having such possession, sufficient to authorize a conviction if the jury believes that such possession has been established beyond a reasonable doubt and in the absence of any other evidence of facts or circumstances in evidence which leave in the mind of the jury a reasonable doubt as to the guilt of such person.'"
>
> *Curtis*, 116 Ill. App. 2d at 300-01.

In the case at bar, following the court's ruling, defendant continued to proclaim his innocence and stated that his conviction was not fair. After repeatedly advising him not to speak, the court told defendant "you were found guilty by me not because of your background, but because of the law and

6

the facts that I heard."

A subsequent hearing on defendant's posttrial motion did not show that defendant was ever inside the apartment building, that he was merely looking into a bag, and that he provided a reasonable explanation for doing so. The trial court acknowledged that there was no direct evidence that defendant was inside Fuentes' home, but stated that circumstantial evidence existed, which was to be given the same weight as direct evidence. The court further noted that a defendant may provide an explanation for that possession, but that the trier of fact may use its common sense experience and either accept or reject that explanation.

The trial court then summarized the evidence that was presented, noting that Fuentes initially observed defendant 20 feet away from his apartment, looking into pillowcases that had been taken from his bed while he was away from his home between 9 a.m. and noon. The court also noted Fuentes' testimony that defendant denied taking the property and claimed that a man who had fled had stolen it, and that Fuentes saw defendant discard an item behind a piece of furniture which was later recovered and found to be a glove containing quarters and jewelry. It further noted that defendant testified that the sidewalk was busy with people at the time, but that he was the only person who picked up items from the ground and looked inside the pillowcases.

The trial court stated that it "heard all of the evidence and made certain determinations," one of which was that the DVD player and VCR would not have been left inside the apartment if the offender had had time to remove those items. The court stated that this evidence raised an inference that the burglar made a hasty exit, which it considered together with the fact that defendant was

standing nearby with a pillowcase containing proceeds from the burglary. The court again noted that it found defendant's testimony incredible and that his explanation did not make any sense, and denied his posttrial motion.

On appeal, defendant first contends that the State failed to prove him guilty beyond a reasonable doubt because it failed to show breaking and entering with the intent to commit a theft therein. Defendant asserts that the trial court presumed that he committed the burglary because he was in possession of some of the items that were stolen from the apartment, but that mere possession of stolen goods, standing alone, is insufficient to establish guilt of burglary. Defendant further argues that there was no evidence to prove that he ever entered the residence.

When a defendant challenges the sufficiency of the evidence, this court must determine whether a rational trier of fact, after viewing the evidence in the light most favorable to the State, could have found the elements of the offense proven beyond a reasonable doubt. *People v. Maggette*, 195 Ill. 2d 336, 353 (2001). This standard applies whether the evidence was direct or circumstantial. A criminal conviction will not be reversed based on insufficient evidence unless the evidence is so improbable or unsatisfactory that there is reasonable doubt as to the defendant's guilt. *Maggette*, 195 Ill. 2d at 353.

To obtain a conviction for residential burglary, the State must prove that defendant knowingly entered the dwelling of another without authority and with an intent to commit a theft or felony therein. 720 ILCS 5/19-3(a) (West 2002); *Maggette,* 195 Ill. 2d at 353. Defendant's possession of recently stolen property, standing alone, is not sufficient evidence to sustain a burglary

conviction. *People v. Housby*, 84 Ill. 2d 415, 423 (1981).

In *People v. Housby*, the Illinois Supreme Court reviewed the constitutionality of the presumption that an individual in possession of recently stolen property is the one who committed the burglary. The *Housby* court concluded that a jury could presume guilt based on exclusive possession of recently stolen property *only if* three requirements were met: (1) there was a rational connection between the defendant's recent possession of stolen property and his participation in the burglary; (2) the defendant's guilt of the burglary "more likely than not" flowed from his recent, unexplained and exclusive possession of the proceeds; and (3) there was corroborating evidence of the defendant's guilt. *Housby*, 84 Ill. 2d at 424. The court in *Housby* stated:

> "To the extent that past Illinois decisions have held that exclusive and unexplained possession of recently stolen property is sufficient, standing alone and without corroborating evidence of guilt, for conviction of burglary, those decisions, in light of the United States Supreme Court holding in *County Court* [*v. Allen*, 442 U.S. 140, 60 L. Ed. 2d 777, 99 S. Ct. 2213 (1979]], can no longer be applied, even where the inference is regarded as permissive. The presumption standing alone does not prove burglary beyond a reasonable doubt. The person in exclusive possession may be the burglar, to be sure, but he might also be a receiver of stolen property, guilty of theft but not burglary, an innocent purchaser without

knowledge that the item is stolen, or even an innocent victim of circumstances." *Housby*, 84 Ill. 2d at 423.

Without deciding that the three-part *Housby* test applies in the case at bar, we note that the test is not met in this instance. Although the facts and surrounding circumstances in this case could support a finding by the trier of fact that there was a rational connection between defendant's recent possession of stolen property and his participation in the burglary based on evidence that defendant was found with some items stolen in the burglary 20 feet from the apartment building where Fuentes resided, the evidence does not support a finding that defendant's guilt of the burglary "more likely than not" flowed from his recent, unexplained and exclusive possession of the proceeds. Nor is there support for a finding that there was corroborating evidence of defendant's guilt.

In its ruling the trial court stated:

> "The State has posited that the defendant's possession of these items is unexplained; and under *People v. Curtis*, unexplained possession can be sufficient for proof beyond a reasonable doubt; and, therefore, support a finding of guilt. *** And the Court is asked to determine whether this is proof beyond a reasonable doubt. The most powerful evidence here obviously is the possession of the property of the defendant without any explanation. To this Court, it is unexplained possession. *I think it is a close case. But it is unexplained possession. The case law supports a conviction.*" (Emphasis added.)

The trial court's decision shows that the judge inferred the burglary merely from the defendant's possession of the stolen property and ignored the admonition of *Housby* that unexplained possession, standing alone, is not sufficient to convict. In its decision the trial court did not discuss the three requirements set forth in *Housby* for a court to presume guilt based on the exclusive possession of recently stolen property.

Other than defendant's possession of the property, there was no corroborating evidence of defendant's guilt. In fact, quite to the contrary, fingerprint samples that were taken at the scene did not match defendant's. This is evidence that supports the position that defendant was not the burglar. Although the trial court found incredible defendant's testimony that someone else had merely dropped the items on the street, or left them in a pillowcase, that testimony and the fact that defendant had possession of items taken in the burglary cannot support a guilty verdict of burglary beyond a reasonable doubt without some corroborating evidence.

Fuentes testified that he had not locked the deadbolt of his front door, but when he returned home, it was locked. In addition, his VCR and DVD player had been disconnected from his television and moved to the dining room table, near the open patio door. Fuentes also testified that there were stairs on the patio that led down to the ground. From this evidence, the trial court concluded that the burglar made a hasty exit from the apartment, quite possibly as he heard Fuentes unlocking the deadbolt, and would have taken the VCR and DVD player if he had had time to grab those items on his way out. The court explicitly stated that it considered this evidence of the hasty exit together with the fact that defendant was found immediately thereafter standing nearby with a

pillowcase containing proceeds from the burglary.

However, when that evidence is considered with the evidence that the fingerprints did not match those of defendant, there is no corroborating evidence to support a finding that defendant's possession of the stolen property was sufficient to convict defendant beyond a reasonable doubt. It is not incredible that the property left behind, which was of minimal value, was left by someone else who burglarized Fuentes' apartment.

The State contends that our supreme court in *People v. Houston*, 118 Ill. 2d 194 (1987), stated that the *Housby* test only applies in jury cases, and it notes that the case at bar was a bench trial. This court finds that, regardless of the nature of the trier of fact (whether judge or jury), it is improper to presume that a defendant committed burglary merely because he was in possession of stolen property taken from a burglary. See *County Court v. Allen*, 442 U.S. 140, 156, 60 L. Ed. 2d 777, 791, 99 S. Ct. 2213, 2224 (1979) (a presumption "must not undermine the factfinder's responsibility at trial, based on evidence adduced by the State, to find the ultimate facts beyond a reasonable doubt").

*Housby* dealt with the formulation of a three-part test for determining whether an instruction, which advised the jury in a burglary case that the defendant's guilt could be inferred from his exclusive and unexplained possession of recently stolen property, violated the due process clause of the United States Constitution. However, the same (or a similar) test can be used by any fact finder to determine the ultimate facts beyond a reasonable doubt. Regardless of which test or rationale a trial court uses to determine guilt or innocence, it must consist of more than the exclusive possession

of the property in close proximity to the burglary. See *Housby*, 84 Ill. 2d at 423.

The question here is not whether defendant has been deprived of due process, but simply whether the evidence was sufficient to prove defendant guilty of burglary beyond a reasonable doubt. See *People v. Richardson*,104 Ill. 2d 8, 13 (1984).

The record shows that the evidence was insufficient to establish defendant's guilt beyond a reasonable doubt. The only evidence the trial court could rationally consider in its decision-making process was the exclusive possession of items of minimal value that were taken in the burglary and were found in close proximity to the offense. As previously indicated, such evidence, standing alone, cannot support a guilty verdict of burglary beyond a reasonable doubt. See *Housby*, 84 Ill. 2d at 423. Accordingly, we reverse defendant's conviction and sentence for residential burglary.

Defendant next contends that the extraction of his blood and perpetual storing of his DNA profile pursuant to section 5-4-3 of the Code violates his fourth amendment right to be free from unreasonable searches and seizures. Under section 5-4-3, a person who is convicted of "any offense classified as a felony under Illinois law" (730 ILCS 5/5-4-3(a-5) (West 2002)) is required to submit blood specimens to the Illinois Department of State Police for genetic analysis.

Because we reverse defendant's conviction, we also reverse the circuit court's order requiring defendant to submit blood specimens for genetic analysis pursuant to section 5-4-3. *People v. Orta*, 361 Ill. App. 3d 342, 352 (2005).

Reversed.

CAHILL  and J. GORDON, JJ., concur.