THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. GINGER TAYLOR, Defendant-Appellant.

Fifth District   No. 5—86—0501

Opinion filed November 2, 1987.

Daniel D. Yuhas and Karen Munoz, both of State Appellate Defender's Office, of Springfield, for appellant.

Dick Allen, State's Attorney, of Edwardsville (Kenneth R. Boyle and Stephen E. Norris, both of State's Attorneys Appellate Prosecutor's Office, and Charles E. Peterson, of counsel), for the People.

JUSTICE WELCH delivered the opinion of the court:

A Madison County jury found defendant Ginger Taylor guilty of arson as charged. The trial court sentenced her to two years of probation. She appeals. We reverse.

Defendant raises issues regarding the fairness of her trial, but we do not consider them because we consider the evidence insufficient to support the judgment. A Madison County grand jury indicted defend-

ant and Bill Irvin for setting fire to her Collinsville residence with intent to defraud an insurer. The prosecution of Irvin was severed from defendant's for trial, and defendant's jury was instructed regarding principles of accountability.

There was ample evidence to support the conclusion that the damage was done by two fires deliberately set at different times by igniting flammable liquid poured on the floor. Thus the evidence sufficiently proved someone set the fires, and the issue was whether it was defendant or someone for whose acts defendant was accountable. Witnesses placed defendant and Irvin at a flea market in Washington Park from 11:30 to 1 p.m., and a neighbor testified defendant and Irvin left defendant's home at 11 a.m.; none of this testimony was contradicted. The fire department arrived at defendant's home about 1 p.m. and broke open the front and rear doors, which were locked. Defendant had the only keys. A third exterior door, to the basement, was not checked; Irvin's testimony that this door could be entered without a key was uncontradicted, as was defendant's testimony that one could enter through a basement window. A fire captain testified: he thought the fire was out when he left at 2:30 p.m., though he could not be sure; when he left defendant was present and the gas and electrical power were shut off; the captain took with him an electrical heater which he found plugged in and tipped over; he did not know whether it was tipped before the firemen arrived. The State's theory at trial was that the heater ignited the fire. A fire investigator, who testified for the State, at his deposition stated the fire was set within one hour of the time it would have become visible outside the house. A witness testified defendant arrived at an area tavern at 3 p.m., after the fire, and drove with the witness to defendant's house, where firemen were fighting the second fire. The fire department was dispatched to the second fire at 3:26 p.m. There was no direct testimony as to what ignited the second fire. Defendant and Irvin denied starting either fire.

As of November 4, 1984, the house was insured for $44,924 and the contents for $31,447. The fires destroyed the structure, and defendant claimed on the policy. There was testimony that defendant and Irvin were considering moving to Texas, though she was reluctant to leave the place where her husband was buried. There was evidence that defendant had attempted to ascertain the resale value of the house prior to the fires, but no evidence that the house was ever offered for sale. There was testimony that defendant carried clothing from the house prior to the fire; defendant and her daughter testified this was the daughter's laundry, which was washed at defendant's house and which defendant wished to return before spraying insecti-

cide inside the house; there was no contradiction of this explanation. Various witnesses testified defendant was visibly upset and crying after the fires.

At the time of the fire defendant had lived in the house for about 16 years. She shared the home with her husband, the father of her six children, until the year before the fire, when he died. She paid off the mortgage after he died. All but one of her children lived elsewhere. Irvin lived in defendant's basement. Defendant testified she lost everything she owned in the fire except what she had in her garage and the belongings she took to the flea market; her furniture was two years old; her water heater and air conditioner were new.

■■ The evidence of defendant's guilt was entirely circumstantial. The State need not prove beyond a reasonable doubt every link in the chain of circumstances it relies on to establish guilt. Circumstantial evidence can support a conviction if it produces a reasonable and moral certainty that the defendant committed the crime. (*People v. Berland* (1978), 74 Ill. 2d 286, 308, 385 N.E.2d 649, 659, *cert. denied* (1979), 444 U.S. 833, 62 L. Ed. 2d 42, 100 S. Ct. 64; *People v. Akins* (1984), 128 Ill. App. 3d 1009, 1012, 471 N.E.2d 1003, 1005.) Where the evidence is entirely circumstantial, guilt must be established so as to exclude every reasonable hypothesis of innocence. (*People v. Deatherage* (1984), 122 Ill. App. 3d 620, 624, 461 N.E.2d 631, 634.) The State argues defendant and Irvin had motive and ample opportunity to set the fires in her house. The parties compare the instant facts and those of *People v. Morton* (1981), 95 Ill. App. 3d 280, 419 N.E.2d 1276, in which the defendant was convicted of residential burglary and arson of the same premises. On appeal this court reversed Morton's arson conviction despite evidence that Morton had motive to destroy evidence of the burglary, purchased gasoline in a can and could not establish an alibi. The facts of *Morton* establish a better proof of guilt than do the instant facts in one significant respect: Morton was either burglar and arsonist or merely a burglar; the instant defendant was either arsonist or victim. Some of the facts, such as her access to the premises and her transportation of clothing the day of the fires, shed little light on defendant's guilt because they are not inconsistent with defendant's status as a victim.

■■ The State urges defendant's motive was to escape her Collinsville residence and move to Texas with the $44,924 insurance proceeds. The evidence of that motive is weak in our view. If defendant's residence were destroyed, there would be less to hold her in Collinsville, and $44,924 would finance the relocation. What the evidence lacks is any proof that defendant was (or perceived herself to be) less free to

move to Texas if the house were not destroyed. Evidence that she owned the house free and clear was uncontradicted. There was no evidence that she ever attempted to sell it, at a desperation price or any other price. There was no evidence that defendant turned a "profit" by "selling" her personal property to the insurer. In summary, viewing the evidence most favorably to the State, the entire financial motivation for the arson was the difference between the $35,000 value of the structure she listed in her claim form and the $44,924 maximum insured value of the structure, *i.e.*, defendant deliberately set fire to her longtime home, her only home, and virtually all of her belongings in exchange for up to a $9,924 "profit" she was far from certain to receive. Defendant's motivation not to destroy the house was obvious and amply shown; even by the State's account of the facts, her motivation to preserve the house was almost as great as her motivation to destroy it.

The circumstantial evidence that defendant set the fires or was accountable for the acts of the person who did is similarly unconvincing when viewed in light of the weak proof of defendant's motive to set the fires. The chief assumption relied on by the State was that no one other than defendant and those she authorized had access to the structure. Defendant and Irvin testified without rebuttal that there were two unlocked points of entry into the structure before the first fire. The structure was easily entered between the first fire and the second. The uncontradicted testimony that the first fire was discovered almost two hours after defendant and Irvin left the premises casts strong additional doubt on the guilt of either, in light of the testimony of the fire investigator, a prosecution witness who deposed that the first fire became visible one hour after it started.

■ This circumstantial evidence of defendant's guilt was not sufficient to establish her guilt beyond a reasonable doubt. The evidence summarized above proved at most that defendant or Irvin might have committed the crime, and even together with motive this possibility was insufficient. (See *People v. Morton* (1981), 95 Ill. App. 3d 280, 282-83, 419 N.E.2d 1276, 1278.) The factual determination of the jury is entitled to great weight, but this court must reverse where the record does not support the finding. (*People v. Modlin* (1979), 74 Ill. App. 3d 387, 391, 393 N.E.2d 5, 8.) The judgment of the circuit court of Madison County is reversed.

Reversed.

HARRISON and LEWIS, JJ., concur.