THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v.
MICHAEL AKINS, Defendant-Appellant.

Fourth District   No. 4—84—0161

Opinion filed November 27, 1984.

Daniel D. Yuhas and John J. Hanlon, both of State Appellate Defender's Office, of Springfield, for appellant.

Donald D. Bernardi, State's Attorney, of Pontiac (Robert J. Biderman and Michael Blazicek, both of State's Attorneys Appellate Service Commission, of counsel), for the People.

JUSTICE TRAPP delivered the opinion of the court:

A jury convicted defendant Michael Akins of the armed robbery of a gas station and a separate theft of an automobile. (Ill. Rev. Stat. 1983, ch. 38, pars. 18—2(a), 16—1(a)(1).) The trial court sentenced him to concurrent terms of 10 years' imprisonment for theft and 25 years' imprisonment for armed robbery. On appeal, defendant asserts the State failed to prove his guilt of either offense beyond a reasonable doubt. He also maintains the trial court abused its discretion in sentencing him.

At trial, Jeffrey Patten testified he worked in a gas station on Odell Road in Odell. At about 3:15 a.m., on August 22, 1983, a purple 1982 Pontiac Firebird pulled into the station. The car's license plate had three letters and two numbers. The driver was a black man, 5 feet 10 inches tall, 140 to 160 pounds, and about 23 or 24 years old. He wore a light blue or purple sweater, a nice pair of blue jeans with fancy stitching on the pockets, and a fairly heavy belt. After Patten filled the tank, the driver pulled out a blue-finished revolver. He told Patten, "I am sorry, I don't have any money and I am going to take what you do have inside." The robber took all the bills from the cash register. He also took three canvas change bags. The robber instructed Patten to take the keys from his own car and throw them

into a garbage can. After the robber departed, Patten called the Livingston County sheriff's department.

Later that morning, police called Patten to tow away a vehicle. Patten testified it was the same one used in the robbery. The car was upside down in a ditch. At trial, Patten identified three bank bags that police found at the scene as the ones taken in the robbery. He identified a gun found as similar to the one the robber had used. He also testified that pants and a belt taken from defendant resembled those worn by the robber.

On August 22, Livingston County Deputy Roger Dobbs was on patrol on Odell Road a few miles from the gas station. He received a radio call informing him of the robbery. The car involved was described as a purple Firebird with a license plate that had three letters and two numbers. At about the same time Dobbs received the dispatch, a car matching the description drove by him. He followed the car, which he testified was a maroon Firebird and had "three letters and three numbers" on its license plate. The Firebird accelerated to over 85 miles per hour and began to pull away from Dobbs. It then went out of control and crashed. Dobbs stopped about 15 feet from the car, which was lying upside down in a ditch on the south side of the road. After waiting two or three minutes for assistance, Dobbs approached the vehicle. Inside, he discovered a revolver and two green bank bags marked Odell State Bank. A third bag was lying outside the car. The driver had left the car. A farmer across the road thought he heard noises in his house. Dobbs searched but found no one.

Detective Patrick Bost arrived on the scene at 3:55 a.m. Bost and another officer noticed a trail from the ditch on the south side of the road leading into a soybean field. They followed the trial, and approximately 200 feet inside the field, they found defendant. Defendant, who was injured, was wearing a shirt and blue jeans.

Detective Ken White noted the Firebird's license plate number was YZD 42. White also identified defendant as the man that Bost had found in the field. Defendant had been wearing blue jeans.

Pontiac police officer Michael Bernardini was also on the scene. He testified Bost discovered defendant at about 4:15 a.m. Bernardini stated the car in the ditch was a Pontiac Trans Am. Bernardini drove defendant to the hospital. There, Bernardini cut off defendant's pants. He found approximately $400 in defendant's pants, socks, and underwear. Bernardini testified defendant had no shirt on at the hospital, although he could not recall if defendant had one on in the field.

Alexander Mankevich, a fingerprint expert, found several frag-

ments of prints on the gun, but none could be identified. He did not find any prints on the cloth bags or the paper money, but he testified it is difficult to get prints from such objects. Mankevich was not asked to attempt to get prints from the car.

James Buckner testified he owned a dark maroon 1982 Pontiac Firebird with license plate YZD 42. On August 18, in Chicago, a "gentleman with a gun" asked him for the keys to the car. Buckner complied, and the man took the Firebird. Buckner next saw his car in an insurance company parking lot. Although the plates were not on the car, Buckner recognized his bicycle rack and a lantern in a secret compartment of the car. The car had been in an accident.

Defendant testified that he served as an organizer for young voters in Illinois. On August 18, he was in Aurora for a political rally. On August 19 he drove from Aurora to Decatur with a friend, Kevin Johnson, for another rally. He was to meet James Davis and another individual named Goldberg. Instead, three men stopped him on the street and told him that he was not needed there. At gunpoint, they forced him into a 1965 Lincoln. For several days they drove around and beat him. Finally, they beat him until he became unconscious. He awoke in the field when police found him. He assumed he had been dumped out of the car. He was wearing jeans and a cream-colored terrycloth sweater. The money in his pants belonged to his organization, and he kept his personal money in his socks.

■ Defendant contends the circumstantial evidence presented was insufficient to prove that he committed the armed robbery beyond a reasonable doubt. Circumstantial evidence is sufficient to support a conviction if it is inconsistent with any reasonable hypothesis of innocence. The jury, however, need not seek out all possible explanations and raise them to the level of reasonable doubt. *People v. Rhodes* (1981), 85 Ill. 2d 241, 249, 422 N.E.2d 605, 608.

■ Defendant complains because Patten failed to identify him as the robber and no fingerprints were found. He asserts Patten's description of the robber is not sufficient proof beyond a reasonable doubt. Yet, every link in the chain of circumstances relied upon to establish guilt does not have to be proved beyond a reasonable doubt. It is only necessary that the evidence, as a whole, produce, with a reasonable and moral certainty, the conclusion that the accused committed the crime. (*People v. Armstrong* (1983), 111 Ill. App. 3d 471, 475-76, 444 N.E.2d 276, 280.) Except for a seven- to eight-year age difference, defendant matched Patten's original description of the robber. Patten identified defendant's belt and pants. Finally, between 45 minutes and one hour after the robbery, police discovered defendant

lying injured some 200 feet from where the robbery vehicle crashed. A trail led from the car through the soybean field to defendant.

Defendant alleges inconsistencies in the State's evidence precluded the jury from concluding that the car in the ditch was the robbery vehicle. Patten originally described the car's color as purple, but all the other witnesses testified it was maroon. Defendant also notes one officer mistakenly referred to the car as a Trans Am. Additionally, the officer in pursuit testified the license plate had three letters and three numbers. Whether that officer misperceived the license plate during the high speed chase or simply erred while testifying is not clear. The officer, however, never lost sight of the vehicle during the chase. The car in the ditch was a Firebird, and its license plate had three letters and two numbers. It contained bank bags taken from the gas station and a revolver similar to the one used in the robbery. Moreover, Patten identified the Firebird in the ditch as the one used in the robbery. The conclusion that the cars were the same is inescapable.

■ Further proof of defendant's guilt was supplied by his own testimony. If a defendant elects to explain his presence at the scene of an offense, it is incumbent upon him to tell a reasonable story or be judged by its improbabilities. (*People v. Morehead* (1970), 45 Ill. 2d 326, 330, 259 N.E.2d 8, 10.) Defendant's testimony was simply incredible. He asked the jury to believe that he was taken at gunpoint while walking on a street in Decatur. His kidnapers drove him around the countryside for two days and beat him, but they did not take the $400 that he had. By chance, they happened to dump him into a soybean field near the spot where a robbery vehicle crashed. He also regained consciousness at exactly the same time police searched the field for a robbery suspect with a description that matched defendant's appearance. Defendant presented no other evidence to corroborate his story. After carefully reviewing the evidence, we conclude the jury correctly found defendant guilty of armed robbery beyond a reasonable doubt.

■ Defendant also argues the evidence was insufficient to prove his theft of the automobile beyond a reasonable doubt. He contends the jury presumed his guilt from the mere fact that he drove the stolen car. He maintains this presumption violated his due process rights.

Defendant relies on *People v. Housby* (1981), 84 Ill. 2d 415, 420 N.E.2d 151. In *Housby*, the court ruled the fact that one had exclusive possession of property taken in a burglary was not sufficient, standing alone, to prove that the person committed the burglary beyond a reasonable doubt. The court noted:

"The person in exclusive possession may be the burglar, to be sure, but he might also be a receiver of stolen property, guilty of theft but not burglary, an innocent purchaser without knowledge that the item is stolen, or even an innocent victim of circumstances." (*People v. Housby* (1981), 84 Ill. 2d 415, 423, 420 N.E.2d 151, 155.)

The court laid out a three-part test to determine if application of the presumption was constitutional. The inference does not infringe upon defendant's due process rights if:

"(i) [T]here was a rational connection between his recent possession of property stolen in the burglary and his participation in the burglary; (ii) his guilt of burglary is more likely than not to flow from his recent, unexplained and exclusive possession of burglary proceeds; and (iii) there was evidence corroborating [his] guilt." (84 Ill. 2d 415, 424, 420 N.E.2d 151, 155.)

Defendant urges this same test be applied in theft cases. See *People v. Munoz* (1981), 101 Ill. App. 3d 447, 428 N.E.2d 624.

The State argues *Housby* should be limited to burglary cases. Unlike burglary, theft under section 16—1(a) of the Criminal Code of 1961 (Ill. Rev. Stat. 1983, ch. 38, par. 16—1(a)) is not limited to the conduct of the actor who initiates the wrongful asportation. It includes the conduct of those who subsequently gain possession of the property knowing it to be stolen. (*People v. Marino* (1970), 44 Ill. 2d 562, 256 N.E.2d 770.) The State concludes the fact that defendant had exclusive possession of stolen property, standing alone, should be sufficient to prove theft beyond a reasonable doubt. The State relies on our decision in *People v. Phoenix* (1981), 96 Ill. App. 3d 557, 421 N.E.2d 1022. In *Phoenix*, defendant was convicted of both burglary and theft. This court applied *Housby* to overturn the burglary conviction, yet we upheld the theft conviction.

A reading of the *Phoenix* case, however, discloses that we did apply the *Housby* test in affirming the theft conviction. In *Phoenix*, the evidence supported the conclusion beyond a reasonable doubt that defendant had obtained the stolen item either by burglary or by purchase, knowing it had been stolen. A defense witness offered evidence to show defendant had purchased the item at a ridiculously low price. *Housby*, therefore, permitted the inference of theft but precluded defendant's guilt of burglary from being inferred.

The *Housby* court discussed the application of presumptions in all criminal cases. In fact, the United States Supreme Court cases relied upon in *Housby* involved presumption other than the one applied in burglary cases. (*County Court v. Allen* (1979), 442 U.S. 140, 60 L. Ed.

2d 777, 99 S. Ct. 2213 (defendants' possession of handguns presumed from fact that defendants were in the same vehicle as handguns); *Leary v. United States* (1969), 395 U.S. 6, 23 L. Ed. 2d 57, 89 S. Ct. 1532 (inference from defendant's possession of marijuana that defendant knew it was illegally imported); *Tot v. United States* (1943), 319 U.S. 463, 87 L. Ed. 1519, 63 S. Ct. 1241 (presumption that firearm was shipped in interstate commerce from possession of firearm by one convicted of a violent crime).) In theft cases, defendant's possession of stolen property does not preclude the possibility that he was an innocent purchaser or a victim of circumstances. Hence, the presumption alone cannot be sufficient proof beyond a reasonable doubt.

The first part of the *Housby* test requires a rational connection between the basic facts that the prosecution proved and the ultimate fact presumed. In this case, the automobile was stolen just four days before defendant was arrested. Defendant used the car in an armed robbery. The jury could reasonably infer from the facts presented that defendant was guilty of theft.

The second part of the test is "that the presumed fact be more likely than not to flow from the proved fact \*\*\*." (*People v. Housby* (1981), 84 Ill. 2d 415, 426, 420 N.E.2d 151, 156.) In other words, the facts presented must make it unlikely that defendant innocently possessed the car. Defendant's use of the car in a robbery makes it unlikely that he came into possession through some innocent means. His inability to get title for the car negates the possibility that he was an innocent purchaser. Finally, had defendant gained possession as an innocent victim of circumstances, he would have explained those circumstances to the jury rather than denying possession of the car.

The third prong of the *Housby* test requires corroborating evidence. The *Housby* court stated sufficient corroboration is presented where defendant himself gives an explanation of possession that the jury reasonably finds to be false. (84 Ill. 2d 415, 430-31, 420 N.E.2d 151, 156.) Although defendant denied possession, his explanation was not credible. His testimony indicated dishonesty and justified application of the presumption. *People v. Klein* (1983), 115 Ill. App. 3d 582, 585, 450 N.E.2d 1268, 1270.

■■ ■ Lastly, defendant argues his sentence should be reduced. Defendant maintains his age, educational achievements, intelligence, and demeanor demonstrate a high potential for rehabilitation. Defendant was 32 years old when sentenced. He obtained his General Educational Development certificate and a computer programming degree from a junior college. He took one year of courses from Illinois State University. Defendant also contends he did not threaten serious harm

to Patten during the armed robbery although he had a gun.

A sentence within the statutory limits will not be disturbed absent an abuse of discretion. (*People v. Cox* (1980), 82 Ill. 2d 268, 412 N.E.2d 541.) The record reveals the trial court carefully considered all the mitigating factors at which defendant now points. We note defendant's scholastic achievements all occurred while he was previously incarcerated. The trial court concluded his criminal conduct spanned his entire adult life except for the periods of incarceration. Defendant was convicted of robbery in 1969, assault and attempted theft in 1971, and murder and aggravated battery in 1973. He was on supervised release at the time of his current offenses. The trial court sentenced defendant to 25 years' imprisonment for armed robbery. This sentence was within the statutory limit (Ill. Rev. Stat. 1983, ch. 38, par. 1005—8—1(3)), and we find no abuse of discretion.

■ Under the Unified Code of Corrections, the maximum sentence for theft is five years' imprisonment. The trial court, however, found an extended-term sentence was proper due to defendant's prior murder conviction. (Ill. Rev. Stat. 1983, ch. 38, pars. 1005—5—3.2(b), 1005—8—2(a).) The court sentenced defendant to 10 years' imprisonment. The supreme court has recently interpreted section 5—8—2(a) of the Code as limiting the imposition of extended-term sentences to only those offenses within the most serious class of which the accused was convicted. (*People v. Jordan* (1984), 103 Ill. 2d 192, 205-06.) Thus, the extended-term sentence for the lesser offense of theft was improper.

For the foregoing reasons, the judgment of conviction for armed robbery is affirmed. The judgment relating to the extended-term sentence for the theft conviction is reversed. Pursuant to Supreme Court Rule 615(b) (87 Ill. 2d R. 615(b)), we reduce the sentence for theft to five years, the maximum term authorized. *People v. Jordan* (1984), 103 Ill. 2d 192.

Affirmed in part and reversed in part.

MILLS, P.J., and GREEN, J., concur.