THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v.
DOUGLAS COLEMAN, Defendant-Appellant.

Second District   Nos. 2—92—0584, 2—92—0602 through 2—92—0604 cons.

Opinion filed January 6, 1994.

G. Joseph Weller, of State Appellate Defender's Office, of Elgin, and·
Daniel M. Kirwan and Edwin J. Anderson, both of State Appellate De-
fender's Office, of Mt. Vernon, for appellant.

Michael J. Waller, State's Attorney, of Waukegan (William L. Browers,
Stephen E. Norris, and Diane L. Campbell, all of State's Attorneys Appel-
late Prosecutor's Office, of counsel), for the People.

PRESIDING JUSTICE INGLIS delivered the opinion of the
court:

Defendant, Douglas Coleman, pleaded guilty to one count of first-
degree murder (Ill. Rev. Stat. 1991, ch. 38, par. 9—1(a)(2) (now 720
ILCS 5/9—1(a)(2) (West 1992))) and three counts of armed robbery (Ill.
Rev. Stat. 1991, ch. 38, par. 18—2(a) (now 720 ILCS 5/18—2(a) (West
1992))). The court sentenced defendant to an extended term of 85
years' imprisonment on the murder conviction and to extended terms
of 50 years' imprisonment on the armed robbery convictions. The

court ordered the sentence for murder to run consecutively to the sentences for armed robbery, which were to run concurrently with each other.

On appeal, defendant argues that: (1) the trial court abused its discretion in sentencing him to a total of 135 years' imprisonment; and (2) the trial court exceeded its authority in imposing extended-term sentences for armed robbery, as the statute allows an extended-term sentence only on the conviction of murder, which is a more serious class of offense than armed robbery. We agree with defendant that the extended-term sentences for armed robbery were improper. We hold that the trial court did not otherwise abuse its discretion. Therefore, we affirm defendant's convictions and the sentence imposed on the murder conviction. However, we reduce defendants' remaining sentences from 50 years apiece to 30 years apiece, the maximum nonextended term for armed robbery.

Each of defendant's convictions was based on a separate incident involving a separate victim. Defendant pleaded guilty to the armed robberies of the following victims: Onelo Relayson on November 25, 1991 (case No. 91—CF—2544); Wilfred Crater on November 25, 1991 (case No. 91—CF—2662); and George F. Hill on December 3, 1991 (case No. 91—CF—2543).

Defendant pleaded guilty to murder under an accountability theory. The murder victim was Shaquita Lewis, who died on December 7, 1991, when a firebomb was thrown into the house in which she, her father, and her three siblings lived. The resultant fire killed Shaquita, injured her father and siblings, and destroyed the house.

There is no dispute that the firebombing was premeditated, that defendant assisted his codefendants, David Bryant and Tyrone Davidson, in assembling the weapon, and that he drove them in his van to a site around the corner from the Lewis home. Whether defendant himself threw the firebomb was at issue at both the hearing on the guilty pleas and the sentencing hearing. At the sentencing hearing, defendant testified that Bryant and not he threw the firebomb. He stated that he believed that Bryant, who was angry at a member of the Lewis family, intended only to set a car on fire. Defendant did not know the Lewis family and had no personal grievance against any of them, although he willingly assisted Bryant in the attack.

The State's factual basis for the guilty plea included testimony from Latrese Friar, a neighbor of the Lewises, that the man who threw the firebomb bore a physical resemblance to defendant but not to Bryant. At the sentencing hearing, Waukegan police officer Walter Cybulski testified that Friar gave him a description of the man who

threw the firebomb and that this description was consistent with that of defendant. When Cybulski showed Friar a photograph of defendant that was taken shortly after defendant was arrested, Friar stated that the man in the photograph wore a mask similar to that worn by the man who had thrown the firebomb. However, Friar never viewed a lineup and never identified the person who threw the bomb.

Detective Luis Marquez, who observed defendant and two other men exit the van shortly after the bombing, would testify that defendant matched the description given by Friar, whose home was across the street from where defendant parked his van directly before the incident. Detective Donald Meadie, who interviewed defendant after the incident, would testify that defendant admitted knowing that Bryant intended to set fire to the Lewis house. Defendant told Meadie that Bryant, not defendant, threw the bomb. Meadie acknowledged that defendant was the first of the three suspects to give a statement in the case and that defendant's statement helped the police to apprehend Bryant and Davidson.

The Waukegan police took a statement from Clarence Evans, who was in jail on pending controlled substance charges. Evans stated that, on the night of December 7, 1991, Bryant came to Evans' house and complained that his brother had just been "rolled on" at a party. Evans gave Bryant a gun. Bryant and defendant left, returning a half hour later; Bryant told Evans someone had shot at Bryant. Defendant and Bryant again left. An hour later, they returned. Evans asked what had happened. Defendant replied, "it's been done," which Evans explained referred to "a fire a [sic] cocktail." Bryant gave Evans a rock of cocaine to give to defendant. Evans inferred that defendant was being paid for starting the fire.

According to the presentence investigation report, defendant had been on parole from Menard Correctional Center for less than four months when he committed the offenses at issue in this appeal. His most recent prior felony conviction was for the unlawful possession of a controlled substance. He also had convictions of the unlawful possession of a firearm by a felon, the unlawful use of a weapon, armed robbery, and four burglaries. As a juvenile, he had been adjudicated a delinquent based on a conviction of burglary. While defendant was incarcerated in 1990, he received three disciplinary reports which resulted in the loss of four months' credit for good behavior.

As of the time of sentencing, defendant had been a substance abuser for 10 years. He was addicted to cocaine and used cocaine as often as he could. He committed the armed robberies on appeal here to get money for drugs. Defendant admitted that he had never partic-

ipated in any drug counseling, although in 1981, his parole board recommended that he do so.

At the sentencing hearing, several longtime friends of defendant testified that he had always treated them with respect and consideration and that he had kept in touch with them while he was incarcerated. Three correctional officers testified that defendant had followed all regulations while he was in jail awaiting the disposition of the charges involved here.

In explaining his decision to sentence defendant to an extended term for murder, the trial judge stated that he could find no applicable statutory factors in mitigation, with the possible exception that defendant had pleaded guilty and thus spared the witnesses the ordeal of testifying at a trial. The judge found several factors in aggravation, including defendant's substantial criminal record; the lack of provocation or justification for defendant's conduct; the serious harm that defendant's conduct threatened and caused to the entire Lewis family; the fact that defendant committed the murder while he was on parole for another offense; and the increasing frequency and severity over time of defendant's criminal behavior. The court stated that defendant had never made a serious contribution to society and that his chances of ever doing so were "bleak."

The judge observed that there was substantial evidence that defendant, not Bryant, threw the firebomb. The judge stated that defendant's guilty plea appeared to have been motivated by the substantial likelihood that a jury would have found that defendant himself threw the bomb and was not merely an accomplice; had the jury so found, defendant could have—and would have—been sentenced to death. The trial judge concluded that, at the least, defendant knew the Lewis house was going to be firebombed and that very likely people would be killed or seriously injured as a result. Thus, the court imposed an extended term of 85 years because the murder was accompanied by exceptionally brutal and heinous conduct indicative of wanton cruelty (see Ill. Rev. Stat. 1991, ch. 38, pars. 1005—5—3.2(b)(2), 1005—8—2(a)(1) (now 730 ILCS 5/5—5—3.2(b)(2), 5/5—8—2(a)(1) (West 1992))).

Consecutive to the 85-year sentence, the judge imposed an extended term of 50 years for each armed robbery, explaining that he based his decision on defendant's criminal record and in particular on defendant's prior conviction of armed robbery (see Ill. Rev. Stat. 1991, ch. 38, par. 1005—5—3.2(b)(7) (now 730 ILCS 5/5—5—3.2(b)(7) (West 1992))).

Defendant timely moved to reconsider the sentences. He argued that the trial court failed to give adequate weight to defendant's potential for rehabilitation. He also argued that the extended-term sentences for armed robbery were improper because the court had already sentenced defendant to an extended term for murder. The trial court declined to change the sentences, and defendant timely appealed.

██ Defendant contends first that the imposition of consecutive sentences totaling 135 years' imprisonment was an abuse of the trial court's discretion. Defendant notes that consecutive sentences are appropriate only if the trial court finds that, considering the nature and circumstances of the offenses and the history and character of the defendant, consecutive sentences are required to protect the public from further criminal conduct by the defendant. (Ill. Rev. Stat. 1991, ch. 38, par. 1005—8—4(b) (now 730 ILCS 5/5—8—4(b) (West 1992)).) Defendant argues that the trial court's sentences assume that defendant had little or no rehabilitative potential. Defendant notes that he pleaded guilty to murder under an accountability theory and that the trial judge observed that there was conflicting evidence as to whether defendant actually threw the bomb that killed Shaquita Lewis.

We do not agree with defendant. The trial court has wide discretion in imposing a sentence, and a court of review will give great deference to a sentence that is not based on improper factors and is within the permissible sentencing range. (*People v. Streit* (1991), 142 Ill. 2d 13, 18-19; *People v. Wesley* (1993), 250 Ill. App. 3d 245, 264.) Defendant does not argue that the trial court considered improper factors, and we do not believe that it did. The court stated on the record that consecutive sentences were necessary to protect the public from harm from defendant. Given defendant's extensive and increasingly serious criminal record, we cannot say that this conclusion was improper. Also, the court did not err in concluding that defendant's chances for rehabilitation were essentially nonexistent. In reaching this finding, the court could take into account not only defendant's criminal record but defendant's history of untreated drug abuse and drug addiction. See *People v. Young* (1993), 250 Ill. App. 3d 55, 65-66.

██ Defendant's second argument is that, having imposed an extended term on the conviction of murder, the trial court could not impose an additional extended term on any of the armed robbery convictions. We agree, and, accordingly, we modify the armed robbery sentences to 30 years apiece, the maximum nonextended term for this offense (see Ill. Rev. Stat. 1991, ch. 38, pars. 18—2(b), 1005—8—

1(a)(3) (now 720 ILCS 5/18—2(b) (West 1992); 730 ILCS 5/5—8—1(a)(3) (West 1992))).

The extended term enables a sentencing court to impose an extended-term sentence "for the class of the most serious offense of which the offender was convicted." (Ill. Rev. Stat. 1991, ch. 38, par. 1005—8—2(a) (now 730 ILCS 5/5—8—2(a) (West 1992)).) First-degree murder was the "most serious offense" of which defendant was convicted, as the potential (and actual) punishment exceeded that permissible for armed robbery. Ill. Rev. Stat. 1991, ch. 38, pars. 1005—8—1(a)(1)(b), (a)(3) (now 730 ILCS 5/5—8—1(a)(1)(b), (a)(3) (West 1992)); *People v. Jordan* (1984), 103 Ill. 2d 192, 202-06.

In *Jordan*, the supreme court held that the statutory language we have quoted means that extended-term sentences may be imposed only for the offenses within the most serious class of offense of which the defendant has been convicted. (*Jordan*, 103 Ill. 2d at 205-07.) In deciding the consolidated appeals in *Jordan*, the court held in part that a defendant (Rowe) who had been convicted of both murder and armed robbery could receive an extended-term sentence only on the murder conviction. Therefore, the court reversed Rowe's extended-term sentence for the "lesser offense" (*Jordan*, 103 Ill. 2d at 206) of armed robbery.

Under a straightforward reading of *Jordan*, defendant's extended-term sentence for armed robbery cannot stand. However, the State argues that the seemingly categorical holding of *Jordan* does not apply where, as here, a defendant has pleaded guilty to separate charges that arose out of unrelated courses of conduct. The State relies on *People v. Whitson* (1984), 127 Ill. App. 3d 999, a third district case decided before *Jordan*, and *People v. Lewis* (1992), 228 Ill. App. 3d 654, a fourth district decision applying *Whitson* to convictions based on guilty pleas that in turn arose from separate incidents. We believe that *Lewis* cannot be reconciled with *Jordan* and that *Whitson* can be harmonized with *Jordan* only if *Whitson* is limited to its distinctive fact pattern, which is not present here.

In *Whitson*, the trial court sentenced the defendant to extended terms of imprisonment on four counts of unlawful restraint. (*Whitson*, 127 Ill. App. 3d at 1000.) At a separate trial, defendant had been convicted of aggravated battery, a more serious offense. (*Whitson*, 127 Ill. App. 3d at 1006.) The aggravated battery conviction and the unlawful restraint convictions arose from wholly distinct factual situations. The defendant received sentences on all the convictions at a single sentencing hearing. *Whitson*, 127 Ill. App. 3d at 1006.

Noting that *Jordan* was pending before the supreme court, the third district held that *Jordan* was not relevant because there the defendant "had a separate trial resulting in separate convictions arising out of distinct factual situations." (*Whitson*, 127 Ill. App. 3d at 1006.) That there was a joint sentencing hearing was merely incidental.

In *Lewis*, the fourth district held that *Whitson* applied where a single judge imposed sentences on convictions flowing from guilty pleas that were accepted at a single hearing. (*Lewis*, 228 Ill. App. 3d at 659.) The guilty pleas and resultant convictions were based on separate incidents. The defendant pleaded guilty to residential burglary, theft, and criminal sexual abuse and received extended terms for the first two of these offenses. (*Lewis*, 228 Ill. App. 3d at 655.) The appellate court upheld the multiple extended terms, even though only burglary was within the most serious class of offenses of which the defendant was convicted. (*Lewis*, 228 Ill. App. 3d at 659.) Relying on *Whitson*, *Lewis* held that *Jordan* did not control the case because the defendants in *Jordan* "were given extended-term sentences on lesser offenses which arose out of the same conduct as the greater offenses for which they were also given extended-term sentences." *Lewis*, 228 Ill. App. 3d at 659.

For several reasons, we decline to follow *Lewis*. First, we agree with defendant that there is simply no way to carve out *Lewis*' purported exception from *Jordan*'s plain and categorical language. Second, assuming *Whitson* is good law, it does not support the holding in *Lewis*. As one court writing after *Jordan* has observed, *Whitson* applies where a defendant has had a "joint sentencing hearing *after separate trials* resulting in separate convictions arising out of distinct factual situations." (Emphasis added.) *People v. Verser* (1990), 200 Ill. App. 3d 613, 624.

Third, several courts have applied *Jordan* to invalidate extended-term sentences that were imposed on convictions of offenses that were not the most serious offenses of which the defendant was convicted, even though the relevant convictions arose out of separate courses of conduct. In *People v. Stevenson* (1990), 204 Ill. App. 3d 342, the defendant was convicted of armed robbery, a Class X felony for which he received 18 years' imprisonment, and aggravated battery, a Class 3 felony for which he received an extended term of 10 years. (*Stevenson*, 204 Ill. App. 3d at 350.) The two offenses took place on different days and involved different victims. (*Stevenson*, 204 Ill. App. 3d at 344-45.) Relying on *Jordan*, the *Stevenson* court modi-

fied the sentence for aggravated battery to five years, the maximum sentence for aggravated battery. *Stevenson*, 204 Ill. App. 3d at 350-51.

In *People v. Bivens* (1987), 156 Ill. App. 3d 222, the defendant received extended terms of imprisonment for armed robbery (a Class X felony), escape (a Class 2 felony) and possession of a stolen vehicle (a Class 3 felony). (*Bivens*, 156 Ill. App. 3d at 223.) The appellate court reversed the conviction of possession of a stolen vehicle and vacated the conviction thereon. (*Bivens*, 156 Ill. App. 3d at 234.) Additionally, the court held that the trial court erred in imposing an extended-term sentence for escape. The defendant's conviction of escape was based on an incident that occurred while the defendant was in jail awaiting trial on the charges of armed robbery. *Bivens*, 156 Ill. App. 3d at 223.

In *People v. Akins* (1984), 128 Ill. App. 3d 1009, decided shortly after *Jordan*, the defendant was convicted of armed robbery and theft, based on separate courses of conduct. (*Akins*, 128 Ill. App. 3d at 1010.) The fourth district, relying on *Jordan* and without mentioning *Whitson*, held that the defendant's extended-term sentence for theft was improper because theft was a less serious offense than armed robbery, for which the defendant had received a nonextended sentence of 25 years' imprisonment. (*Akins*, 128 Ill. App. 3d at 1016.) The court reduced the sentence for theft to five years, the maximum nonextended term for theft. *Akins*, 128 Ill. App. 3d at 1016.

We elect to follow *Stevenson, Bivens,* and *Akins,* as we believe that these decisions are more faithful to the straightforward language of the extended-term statute and of the *Jordan* decision than is *Lewis.* Pursuant to Supreme Court Rule 615(b) (134 Ill. 2d R. 615(b)), we reduce defendants' three sentences for armed robbery from 50 years apiece to 30 years apiece, the maximum nonextended sentence. These terms shall, per the order of the trial court, run concurrent to one another and consecutive to the term for murder, for a total of 115 years.

Defendant's convictions are affirmed. His sentence of 85 years for first-degree murder is affirmed, and his sentences for armed robbery are each reduced from 50 years to 30 years, the maximum authorized nonextended term (see Ill. Rev. Stat. 1991, ch. 38, par. 1005—8—1(a)(3) (now 730 ILCS 5/5—8—1(a)(3) (West 1992))).

Affirmed as modified.

McLAREN and COLWELL, JJ., concur.