(Nos. 76833, 76880 cons.

THE PEOPLE OF THE STATE OF ILLINOIS, Appellant and Cross-Appellee, v. DOUGLAS COLEMAN, Appellee and Cross-Appellant.

*Opinion filed June 22, 1995.*

HARRISON, J., concurring in part and dissenting in part.

Roland W. Burris, Attorney General, of Springfield, and Michael J. Waller, State's Attorney, of Waukegan (Norbert J. Goetten, Stephen E. Norris and Diane L. Campbell, of the Office of the State's Attorneys Appellate Prosecutor, of Mt. Vernon, of counsel), for the People.

Daniel M. Kirwan, Deputy Defender, and Edwin J. Anderson, Assistant Defender, of the Office of the State Appellate Defender, of Mt. Vernon, for appellee and cross-appellant, and Douglas Coleman, of Pontiac, appellee and cross-appellant *pro se.*

JUSTICE MILLER delivered the opinion of the court:

Defendant, Douglas Coleman, pleaded guilty in the circuit court of Lake County to one count of first degree murder and to three counts of armed robbery. He was

sentenced to an extended term of 85 years in prison for murder, and to extended terms of 50 years in prison for each armed robbery. The sentences for armed robbery were to be served concurrently to each other and consecutively to the sentence for murder. The appellate court held that the trial court erred in imposing extended terms for the armed robberies, and reduced each of those sentences from 50 to 30 years, the maximum authorized nonextended term. (255 Ill. App. 3d 569, 573-76.) It found no other abuse of discretion. (255 Ill. App. 3d at 570.) We granted the State's and defendant's petitions for leave to appeal (145 Ill. 2d R. 315(a)), and have consolidated them for review.

Four indictments were filed against the defendant. In cause No. 91—CF—2542, defendant and two codefendants, David Bryant and Tyrone Davidson, were charged in a nine-count indictment with various offenses, including first degree murder and aggravated arson. These charges arose from their participation in the fire bombing of the Lewis home in Waukegan on the night of December 7, 1991. Shaquita Lewis, a 17-year-old girl, died in this fire. Her father and two sisters escaped the blaze through a second-story window, suffering injuries in their flight. The house was destroyed. According to the record, codefendant Bryant believed that Steven Lewis, Shaquita's brother, had shot at Bryant on the evening of December 7, 1991, and the fire bombing was in retaliation for that alleged act. Defendant's and codefendants' cases were severed during pretrial proceedings for the purposes of further prosecution.

In three separate and unrelated indictments (cause Nos. 91—CF—2543, 91—CF—2544, 91—CF—2662), defendant was also charged with committing the offense of armed robbery against three separate cab drivers at different locations in November and December 1991.

At a consolidated plea hearing on March 16, 1992,

the State and defendant presented a negotiated plea agreement. According to the agreement, defendant would plead guilty to one count of first degree murder in connection with the fire bombing of the Lewis home, and to three separate counts of armed robbery in connection with the three armed robbery indictments. In exchange, the State agreed not to seek the death penalty in the murder prosecution. The State also agreed to dismiss the remaining counts resulting from the fire-bombing incident and various other charges resulting from incidents not related to the fire bombing or the armed robbery incidents. No other conditions were placed upon sentencing. The judge explained that if defendant chose not to plead guilty, defendant would have the right to separate trials on each of the four indictments. The judge admonished defendant that he could be sentenced to life imprisonment for murder, to an extended term for each offense charged, and to a consecutive sentence for each offense charged.

The State provided a factual basis for the guilty pleas. The State would have offered evidence to establish that defendant participated in the fire bombing, and that Shaquita Lewis died from smoke inhalation as a result of the fire. The only disputed issue was whether defendant actually threw the Molotov cocktail that started the fire. Further, the State would have called the three armed robbery victims to testify, and would have introduced defendant's admission to Waukegan police that he committed those robberies. The judge accepted defendant's guilty pleas. The cases then proceeded to a sentencing hearing.

A presentence investigation report was filed on April 8, 1992. According to this report, defendant's criminal history spanned 19 years. He was on parole when he committed the instant offenses, and reported a 10-year history of substance abuse.

At the sentencing hearing on April 14, 1992, the State presented testimony to corroborate its theory that defendant threw the Molotov cocktail. Defendant maintained that codefendant Bryant threw it. In mitigation, defendant called seven witnesses and made a statement in allocution.

The trial judge imposed an extended term of 85 years in prison for murder and an extended term of 50 years in prison for each of the three armed robberies. The sentences for armed robbery were to be served concurrently to each other and consecutively to the sentence for murder. After the denial of his motion to reconsider the sentences, defendant appealed.

The appellate court affirmed the imposition of consecutive sentences, but reduced the extended terms for the armed robberies from 50 to 30 years, the maximum authorized nonextended term. Citing *People v. Jordan* (1984), 103 Ill. 2d 192, which involved separate charges arising from the same course of conduct, the appellate court held that an extended term was only allowed "for the class of the most serious offense of which the offender was convicted." (255 Ill. App. 3d at 574.) It declined to follow *People v. Lewis* (1992), 228 Ill. App. 3d 654, which affirmed the imposition of an extended term for the lesser of two offenses arising from a course of conduct unrelated to the greater offense even though the sentences were imposed during a single sentencing hearing. (255 Ill. App. 3d at 575-76.) It also distinguished *People v. Whitson* (1984), 127 Ill. App. 3d 999, which allowed the imposition of an extended term for a lesser offense arising from conduct unrelated to the greater offense, on the ground that, although the sentencing hearings were consolidated, the defendant had been prosecuted in separate trials. (255 Ill. App. 3d at 574-75.) In support of its decision to reduce the sentences, the appellate court cited *People v. Stevenson* (1990), 204

Ill. App. 3d 342, *People v. Bivens* (1987), 156 Ill. App. 3d 222, and *People v. Akins* (1984), 128 Ill. App. 3d 1009. The appellate court believed the holding in *Jordan* was applied in each of those cases to invalidate extended terms for lesser offenses arising from courses of conduct unrelated to the greater offenses. 255 Ill. App. 3d at 575-76.

The State argues here that the trial court properly imposed extended terms for each of the three armed robbery offenses that arose from separate and unrelated courses of conduct, and that the sentences imposed were proper. Defendant argues that he should not have been sentenced to extended terms for the armed robbery offenses, and that the consecutive sentences were excessive, particularly where he was guilty of murder by accountability only.

We first address whether extended terms may be imposed for the armed robbery offenses that arose from courses of conduct unrelated to each other and the murder offense, but were joined with the murder case at a plea and sentencing hearing. The question presented is one of statutory construction. In construing a statute, we must ascertain and give effect to the legislative intent. (*People v. Bole* (1993), 155 Ill. 2d 188, 195.) We must also assume that the legislature did not intend to produce absurd results. (*Bole*, 155 Ill. 2d at 195.) We begin our inquiry with the language of the statute. *Bole*, 155 Ill. 2d at 195.

Section 5—8—2(a) of the Unified Code of Corrections provides in part:

"A judge shall not sentence an offender to a term of imprisonment in excess of the maximum sentence authorized by Section 5—8—1 for the class of the most serious offense of which the offender was convicted unless the factors in aggravation set forth in paragraph (b) of Section 5—5—3.2 were found to be present." (Ill. Rev. Stat. 1991, ch. 38, par. 1005—8—2(a).)

This section further provides that an extended term for first degree murder ranges from 60 to 100 years and an extended term for armed robbery, a Class X felony, ranges from 30 to 60 years. (Ill. Rev. Stat. 1991, ch. 38, pars. 1005—8—2(a)(1), (a)(2).) The trial court imposed extended terms for the murder conviction and each of the three armed robbery convictions within these ranges.

Because the potential penalty for first degree murder is greater than that for armed robbery, however, defendant maintains that the extended terms imposed for the armed robbery convictions were improper. Like the appellate court, defendant relies upon *People v. Jordan* (1984), 103 Ill. 2d 192.

In *Jordan*, this court construed section 5—8—2(a) to mean that, when a defendant has been convicted of multiple offenses of differing classes, an extended-term sentence may only be imposed for the conviction within the most serious class. (*Jordan*, 103 Ill. 2d at 206-07.) The *Jordan* court further held that multiple extended terms for offenses within the same class may be imposed at the same time so long as that class was the most serious one. (*Jordan*, 103 Ill. 2d at 207.) In so holding, the *Jordan* court found that "the legislature intended that more than one extended-term sentence may be imposed." *Jordan*, 103 Ill. 2d at 207.

In response, the State argues that *Jordan* is not applicable because each case in *Jordan* involved lesser offenses arising from the same course of conduct as the greater offenses. In contrast, the four instant cases, while consolidated, involved separately charged offenses arising from unrelated courses of conduct.

The appellate court has reached conflicting results on the issue raised by the State. See *People v. Britt* (4th Dist. 1994), 265 Ill. App. 3d 129 (court held extended terms may be imposed for lesser offenses that were un-

related to greater offenses even though consolidated at sentencing hearing); *People v. Lewis* (4th Dist. 1992), 228 Ill. App. 3d 654 (court held extended term may be imposed for lesser offense that was unrelated to greater offense even though consolidated at plea and sentencing hearing); *People v. Whitson* (3d Dist. 1984), 127 Ill. App. 3d 999 (court held extended term may be imposed for lesser offense that was tried separately from greater offense even though consolidated at sentencing hearing); but see *People v. Brasseaux* (2d Dist. 1993), 254 Ill. App. 3d 283 (court held extended terms may not be imposed for lesser offenses that were unrelated to greater offense but consolidated at plea and sentencing hearing); *People v. Akins* (4th Dist. 1984), 128 Ill. App. 3d 1009 (court held extended term may not be imposed for lesser offense that was separate from greater offense).

The defendant points out that the court in *Jordan* did not expressly exclude from its holding the question of separate and unrelated offenses joined at a single plea and sentencing hearing. The court in *Jordan* also did not expressly exclude from its holding the question of unrelated offenses prosecuted separately. The parties do not dispute, however, that extended terms on differing class offenses in the latter situation would be proper. Otherwise, a repeat offender would be eligible for an extended term only once throughout what might be an offender's criminal career. We do not believe that the legislature intended a result that would fail to discourage recidivism. Further, the statute does not say that the judge shall impose extended terms only for the class of the most serious offense of which the offender was ever convicted.

The question here then becomes whether the consolidation of unrelated charges at a plea and sentencing hearing restricts the sentencing alternatives that would otherwise be available in the case of a defendant

convicted of multiple, unrelated criminal acts in separate prosecutions. Defendant would have this court find that consolidation makes a difference. He essentially asks this court to treat the four guilty pleas as if they arose from the same course of conduct. Thus, under *Jordan*, the extended terms for the armed robberies would be improper. The State, however, asks this court to find that consolidation does not change the penalties that could otherwise be imposed upon a defendant found guilty of multiple, unrelated criminal acts. The State maintains that an offender's conduct is paramount to the procedure chosen by the State to prosecute or the procedure chosen by the offender to defend.

We agree with the State. We view the consolidation as a joining of unrelated prosecutions rather than as a fusion of cases into a single prosecution. Thus, the statutory directive that an extended term may only be imposed "for the class of the most serious offense of which the offender was convicted" does not prohibit the imposition of extended terms in these cases. See *Lewis*, 228 Ill. App. 3d at 659; *Whitson*, 127 Ill. App. 3d at 1006.

If consolidation were to modify the sentencing options, a defendant would become immune from extended terms for less serious, unrelated criminal acts in the event the less serious cases were joined with a separate case or cases involving a greater class felony. To pierce this immunity, the State would have to pursue separate plea and sentencing proceedings in unrelated cases to preserve the option of extended terms. The State's election for separate proceedings would result in needless repetition and a waste of the State's, the defendant's, and the court's resources. We agree with the State that the legislature did not intend to produce such an unusual result. *Bole*, 155 Ill. 2d at 195.

Defendant argues, however, that if extended terms are permitted, defendants may refuse to plead guilty

and hold the State to trial for each separate charge. He argues the State's efficiency argument is thus illusory. In these cases, however, defendant was admonished that he was eligible for extended terms for murder and the armed robberies. Yet, defendant persisted in his plea agreement and did not alter his pleas. We believe our holding will not diminish incentives to enter into plea agreements. Like other enhancements, the possibility of an extended term may be used by a defendant or the State in negotiating a plea agreement.

Finally, defendant relies upon two cases, also cited by the appellate court below, for the argument that courts, consistent with *Jordan*, have refused to sentence a defendant to extended terms for unrelated, less serious offenses. (See *People v. Stevenson* (1990), 204 Ill. App. 3d 342; *People v. Bivens* (1987), 156 Ill. App. 3d 222.) In both cases, however, the greater and lesser offenses were not unrelated: they arose from the same course of conduct. In *Stevenson*, the charges arose from the defendant's robbing and beating of one victim. In *Bivens*, the charges arose from the defendant's prison escape. Thus, neither case supports defendant here.

We interpret section 5—8—2(a) of the Unified Code of Corrections (Ill. Rev. Stat. 1991, ch. 38, par. 1005— 8—2(a)) to allow for the imposition of extended terms on separately charged, differing class offenses that arise from unrelated courses of conduct regardless of whether the cases are separately prosecuted or consolidated. Because the four instant cases resulted from separate and unrelated courses of conduct, the trial court had the option to impose an extended term for each conviction. We therefore reinstate the 50-year, extended-term sentences imposed for the three armed robberies.

Next, defendant argues that his consecutive sentences were excessive, particularly where he was guilty of murder by accountability only. Consecutive sentences

are to be imposed sparingly, and may be modified if the record does not support such a decision. (*People v. O'Neal* (1988), 125 Ill. 2d 291, 298.) The trial court, however, is the proper forum for sentencing, and its decision in regard to sentencing is entitled to great deference. (*People v. Perruquet* (1977), 68 Ill. 2d 149, 154.) A sentence within the statutory limits will not be disturbed absent an abuse of discretion. *People v. Cox* (1980), 82 Ill. 2d 268, 279-80.

The sentences imposed here were within statutory limits. The sentencing judge imposed extended terms within the potential ranges for murder and armed robbery. (Ill. Rev. Stat. 1991, ch. 38, pars. 1005—8—2(a)(1), (a)(2).) We note that an extended term may be imposed upon a defendant found guilty by accountability. (*Jordan*, 103 Ill. 2d at 215.) The aggregate of the consecutive sentences here was also less than the sum of the maximum extended terms for the two most serious felonies involved. (Ill. Rev. Stat. 1991, ch. 38, par. 1005—8—4(c)(2).) We thus review the record for any abuses of discretion.

In aggravation, the sentencing judge considered matters set forth in the presentence investigation report. Defendant had a history of juvenile delinquency, numerous misdemeanor and traffic offenses, and seven felony convictions between 1978 and 1990. He committed the instant offenses while on parole. He reported a 10-year history of substance abuse, and indicated that the present armed robberies were committed to fund his cocaine habit. He had not participated in any substance abuse counseling despite a parole board's recommendation to do so in 1981.

At the sentencing hearing, the State tendered five victim impact statements in aggravation. It then introduced testimony of several Waukegan police detectives to corroborate its theory that defendant threw the

bomb. Detective Cybulski testified that Latrese Friar, a neighbor of the Lewises, witnessed the driver exit a silver van on the night of the fire, run toward the Lewis home carrying a container, and then return to the van. Defendant admitted that he drove the van to the Lewis neighborhood on the night of the fire. Friar further described the man she saw, noting that he wore a nylon hose over a wool stocking cap. After defendant's arrest, officers recovered from his van a stocking cap and nylon hose that had been cut into a mask. Viewing a photograph of defendant wearing the mask, Friar stated that it was being worn in the same manner as the one worn by the man she saw before the fire. Detective Meadie testified that the physical characteristics of the man Friar saw on the night of the fire more closely resembled defendant than the codefendants.

The State also introduced statements made by Clarence Evans while he was in custody for possession of a controlled substance, and statements made by codefendant Davidson. According to Evans, on the night of the fire, defendant and codefendants left Evans' home in defendant's van after Bryant complained that someone had shot at him. When they returned, Evans asked defendant what had happened. Defendant answered, "A fire, it's been done!" Evans asked, "You did it just now?" Defendant replied, "Yeah, a Molotov cocktail." Evans then received cocaine from Bryant to give to defendant. Evans stated, "From the payment to Doug [defendant] it made me believe he had started the fire." Codefendant Davidson stated that he believed defendant threw the Molotov cocktail.

Defendant testified at the sentencing hearing. He admitted that he drove the codefendants to pick up supplies used in making the bomb and then drove them to the Lewis neighborhood on the night of the fire. Defendant maintained that Bryant threw the bomb. He said

that he thought Bryant was going to burn Steven Lewis' car.

In mitigation, defendant called seven witnesses. Four were friends who described defendant as helpful and respectful. The other three were correctional officers where defendant was jailed, who testified that defendant followed regulations. The presentence investigation, however, revealed that defendant had received three disciplinary reports during his last prison term. Defendant also offered to testify against the codefendants. In his statement in allocution, defendant apologized for Shaquita Lewis' death and expressed sorrow for the Lewis family. He blamed his bad acts on his drug addiction. He stated that he would like to rejoin the community to discourage others from following the wrong path.

The sentencing judge was convinced that defendant had knowledge of and was accountable for the fire bombing. The judge found no applicable mitigating factors except possibly that defendant had spared the Lewis family from the ordeal of a trial by pleading guilty. The judge observed that defendant's positive contribution to society was minimal. At a hearing on defendant's motion to reconsider sentence, the judge further commented that defendant's potential for rehabilitation was "next to nil."

Regarding consecutive sentences, the sentencing judge stated that "the defendant's crimes and propensity to commit them were *** increasingly dangerous to honest, innocent and law abiding citizens." The judge also believed defendant would likely commit future crimes if at liberty. It is clear that the judge thought consecutive terms were necessary to protect the public. (See *People v. Pittman* (1982), 93 Ill. 2d 169, 178 (court held sentencing court not required to state it is of opinion that consecutive term is necessary to protect public so long as

record provides a basis for opinion).) Because we agree with the State that the judge made this finding, we do not address its argument that the finding is unnecessary when offenses arise from separate conduct. See Ill. Rev. Stat. 1991, ch. 38, par. 1005—8—4(b).

Defendant has not challenged the factors relied upon by the judge in imposing the extended terms, and we believe those factors were proper. See Ill. Rev. Stat. 1991, ch. 38, pars. 1005—5—3.2(b)(1), (b)(2), (b)(7).

Defendant argues that the sentences imposed fail to reflect his potential for rehabilitation. (Ill. Const. 1970, art. I, § 11.) A defendant's rehabilitative potential, however, is not entitled to greater weight than the seriousness of the offense. (See *People v. Morgan* (1993), 250 Ill. App. 3d 728, 735.) Defendant further argues that public protection does not justify the imposition of consecutive sentences in addition to an initial 85-year sentence imposed for the murder conviction. We point out, however, that the sentences imposed were within the statutory limits and that, under the circumstances presented, defendant was eligible for life imprisonment.

Defendant points to *People v. O'Neal* (1988), 125 Ill. 2d 291, in which a majority of this court affirmed the modification of the defendant's 40-year murder sentence to run concurrently, instead of consecutively, with his 20-year sentence for rape and 15-year sentence for aggravated kidnapping. Defendant also cites *People v. Neither* (1992), 230 Ill. App. 3d 546, in which the appellate court reduced and modified consecutive sentences to run concurrently where the defendants committed a series of robberies and aggravated batteries against four elderly victims. We find both cases are distinguishable from the instant cases based on the seriousness of the crimes, and the character and criminal history of the defendants.

The sentencing judge adequately considered the

mitigating and aggravating factors, and it is not our duty to reweigh the factors involved in his sentencing decision. (*People v. Pittman* (1982), 93 Ill. 2d 169, 178.) We find no abuse of discretion.

For the reasons stated, we affirm in part the judgment of the appellate court, but reverse that part of the judgment which reduced the extended terms for the armed robbery convictions, and we affirm the judgment of the circuit court.

*Appellate court affirmed in part*
*and reversed in part;*
*circuit court affirmed.*

JUSTICE HARRISON, concurring in part and dissenting in part:

I would affirm the appellate court's judgment in full. Section 5—8—2(a) of the Unified Code of Corrections (Ill. Rev. Stat. 1991, ch. 38, par. 1005—8—2(a)) states that a judge cannot sentence an offender to a term of imprisonment in excess of the maximum authorized sentence for the class of the most serious offense of which the offender was convicted, unless the statutory factors in aggravation are present. What this means, as our court held in *People v. Jordan* (1984), 103 Ill. 2d 192, 206, is that extended-term sentences may only be imposed for the offenses within the most serious class of offense of which the accused is convicted. The circuit court therefore erred when it imposed extended-term sentences on defendant's armed robbery convictions. Defendant should have received an extended term only on his conviction for first degree murder.

The majority reaches a contrary result by arguing that section 5—8—2(a)'s limit on extended terms is inapplicable where, as here, the offenses in question involved separately charged offenses arising from unrelated courses of conduct. The statute, however, contains no such restriction, and this court is not at liberty to depart

from the plain language and meaning of the statute by reading into it exceptions, limitations or conditions that the legislature did not express. *Solich v. George & Anna Portes Cancer Prevention Center of Chicago, Inc.* (1994), 158 Ill. 2d 76, 83.

To the extent that there is any ambiguity in the law, that ambiguity should be resolved in favor of the defendant, not the State. A criminal or penal statute is to be strictly construed in favor of an accused, and nothing is to be taken by intendment or implication against him beyond the literal meaning of the statute. If a statute creating or increasing a penalty or punishment can be construed in more than one way, the construction that operates in favor of the accused is the one that must be adopted. *People ex rel. Gibson v. Cannon* (1976), 65 Ill. 2d 366, 370-71.

While I can sympathize with my colleagues' desire to see this particular defendant remain in jail for as long as possible, that is no justification for ignoring these settled and accepted principles of law. Contrary to the majority's view, giving the statute its plain meaning would not produce unusual results. Rather, it would provide the State with an additional mechanism to induce defendants to negotiate pleas, in one consolidated proceeding, for every crime they had committed until that time. Although such an inducement was not necessary here, no one can seriously doubt that the possibility of avoiding extended terms for lesser offenses will make guilty pleas a more attractive option for defendants who have committed multiple offenses. If defendants can limit the amount of jail time they face, they are much more likely to plead guilty to everything at once.

Under the majority's construction, that incentive has now been eliminated. In future cases, defendants represented by competent counsel will have no sound

reason for agreeing to the sort of plea arrangement involved in this case. As a result, the State will be required to pursue separate plea and sentencing proceedings in virtually every prosecution involving separate and unrelated offenses. I fail to see why we should impose this extra burden on the State, whose criminal enforcement resources are already overtaxed, when the General Assembly has not required us to do so. On this issue, I therefore dissent.