**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

2022 IL App (3d) 180577-U

Order filed January 11, 2022

_____

IN THE

APPELLATE COURT OF ILLINOIS

THIRD DISTRICT

2022

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) ) | Appeal from the Circuit Court of the 10th Judicial Circuit, Peoria County, Illinois, |
| Plaintiff-Appellee, | ) ) | |
| v. | ) ) | Appeal No. 3-18-0577 Circuit No. 16-CF-797 |
| MARCUS L. YATES, | ) ) ) | Honorable Paul P. Gilfillan, |
| Defendant-Appellant. | ) | Judge, Presiding. |

_____

JUSTICE McDADE delivered the judgment of the court.
Presiding Justice O'Brien and Justice Lytton concurred in the judgment.

_____

**ORDER**

¶ 1      *Held*:    The circuit court did not abuse its discretion in sentencing defendant to 22 years' imprisonment for aggravated battery.

¶ 2      Defendant, Marcus L. Yates, appeals his conviction for aggravated battery. Defendant argues that the circuit court of Peoria County abused its discretion in sentencing him to 22 years' imprisonment because it failed to adequately consider his age and familial support. We affirm.

¶ 3                            I. BACKGROUND

¶ 4     Defendant was charged with three counts of attempted first degree murder (720 ILCS 5/8-4(a), 9-1(a)(1) (West 2016)), one count of aggravated battery (*id.* § 12-3.05(e)(1)), and unlawful possession of a firearm (*id.* § 24-3.1(a)(2)). The charges arose from a single incident in which defendant allegedly shot Rickey Childs with a handgun. Defendant was 19 years old at the time of the incident.

¶ 5     Defendant pled guilty to aggravated battery in exchange for the State's agreement to dismiss the other four charges. The State noted that the mandatory minimum sentences for the three dismissed counts of attempted first degree murder were 31 years' imprisonment, 26 years' imprisonment, and 21 years' imprisonment.

¶ 6     As a factual basis for the plea, the State indicated that police officers would testify that they responded to a call outside a residence on the day of the incident. Childs told them that he had been in front of a house talking to a neighbor when a younger black male in tan pants and a black hooded sweatshirt came around the house next door and fired a gun three times. Childs was hit once in the hip. Childs knew the man who shot him, but he did not know his name. The State expected that Childs would identify defendant as the shooter.

¶ 7     The State would also present evidence that an eyewitness reported that he saw a man wearing a black sweatshirt that had "LA Kings" written on it run through an alley and the yards of several homes prior to the shooting. The man stood behind a garage, peered toward the street where the shooting occurred, and ran out of the witness's sight toward the location of the shooting. The witness heard three shots fired. After the shooting, the witness saw the man in the black sweatshirt run through an alley. The witness saw the butt of a gun in the man's hand.

¶ 8     Officers apprehended defendant approximately one hour later. Defendant was wearing tan pants and a black hooded sweatshirt that had "LA Kings" written on it. Defendant initially

gave the officers a false name, but an officer familiar with him later identified him by his correct name. Defendant was interviewed. He initially admitted that he committed the shooting and threw the gun in the river. Defendant later said that an individual named Darious Davis borrowed his jacket, committed the shooting, and then gave defendant his jacket back. Officers later determined that Davis was in jail at the time of the shooting.

¶ 9        A presentence investigation report (PSI) was prepared. The PSI indicated that defendant had prior adjudications of juvenile delinquency for the felony offenses of mob action, unlawful possession of a motor vehicle, unlawful use of weapons, and unlawful possession of firearms. Defendant reported that he used marijuana and ecstasy daily. Defendant stated that he did not commit the offense, but he was sorry that the victim was shot. The PSI indicated that defendant had an infant child. Defendant's mother and siblings submitted letters of support. Defendant's mother also filled out a family questionnaire. In the questionnaire, defendant's mother indicated that she believed defendant had a drug problem because he had tried several drugs in an attempt to fit in.

¶ 10        A sentencing hearing was held. No formal evidence was presented by either party. After hearing arguments, the court sentenced defendant to 22 years' imprisonment. The court indicated that it had considered the arguments of the parties, the information contained in the PSI, the letters of support submitted by defendant's family, and the statutory factors in aggravation and mitigation. The court reasoned:

> "I'm finding that a lengthy sentence to the Department of Corrections is
> appropriate and is necessary to deter others and is consistent with the ends of
> justice and sending another message, perhaps unheeded again, that gun violence
> in this and any other city is intolerable and has reached the breaking point."

The court also noted defendant's lack of responsibility. The court stated that defendant had initially admitted to the offense and then falsely blamed another individual for the offense.

¶ 11  The court acknowledged that this offense was defendant's first adult felony but noted that this was because defendant had only recently become an adult before committing the offense. The court reasoned:

"[I]t's one thing to have an adult before the Court with his or her first felony offense at all, ever, and it's another thing to have such an adult before the Court with a track record the type of [defendant's] here with three prior felony convictions. That only gives the Court confidence that if left unchecked and unpunished, so to speak, that his behavior would just continue to escalate out of control."[1]

¶ 12  The court stated that it had considered defendant's young age. Specifically, the court said:

"I have to acknowledge the defendant's youth. And while he wasn't a minor at the time of this occurrence, it's pretty commonly accepted that someone of 19 years of age certainly hasn't had full development of his own maturity—and brain development for that matter—which would lead a person to succumb to peer pressure, as is often seen, lead a person to commit impetuous acts, even as violent and vile as this one, and make poor decisions in general."

¶ 13  The court noted that defendant had the support of family members and had a child. The court considered in mitigation that defendant's imprisonment would cause hardship to his

_____

[1]Although the court stated that defendant had three prior felony convictions, the PSI showed that he had four adjudications of juvenile delinquency for felony offenses.

4

dependents, including his child. The court stated that the sentence was lower than it would have otherwise been due to his relative youth and family relationship.

¶ 14    Defendant filed a motion to reconsider his sentence on the basis that it was excessive. The court denied the motion. The court reasoned:

> "[W]e're dealing with a cold[-]blooded shooting, so to speak, and five very serious charges that were reduced down to one, that led to a knowing sentencing range of 6-to-30. Given the facts and circumstances of this case, a sentence arguably in the upper half of the sentencing range, but just barely, is—well, not arguably. Literally, it's well within the sentencing guidelines and sentencing range, and is appropriate considering all of the factors in aggravation, mitigation; his character; his history, criminal record; circumstances of the offense; necessity to detour [*sic*] others from committing arbitrary gun crimes. So also exercising the Court's discretion, I'll respectfully deny the motion to reconsider the sentence."

¶ 15                                          II. ANALYSIS

¶ 16    Defendant argues that the circuit court abused its discretion in sentencing him to 22 years' imprisonment because it failed to adequately consider his youth and familial support. We find that the sentence was not an abuse of discretion.

¶ 17    "The trial court has broad discretionary powers in imposing a sentence, and its sentencing decisions are entitled to great deference." *People v. Alexander*, 239 Ill. 2d 205, 212 (2010).

> "The trial court is granted such deference because the trial court is generally in a better position than the reviewing court to determine the appropriate sentence. The trial judge has the opportunity to weigh such factors as the defendant's credibility, demeanor, general moral character, mentality, social environment,

5

habits, and age. [Citations.] Consequently, the reviewing court must not substitute its judgment for that of the trial court merely because it would have weighed these factors differently." *People v. Stacey*, 193 Ill. 2d 203, 209 (2000).

¶ 18 "A reviewing court may not alter a defendant's sentence absent an abuse of discretion by the trial court." *Alexander*, 239 Ill. 2d at 212. "[A] sentence within statutory limits will be deemed excessive and the result of an abuse of discretion by the trial court where the sentence is greatly at variance with the spirit and purpose of the law, or manifestly disproportionate to the nature of the offense." *Stacey*, 193 Ill. 2d at 210.

¶ 19 We find that the 22-year sentence of imprisonment imposed by the circuit court was not an abuse of discretion. The sentence was well within the applicable sentencing range of 6 to 30 years' imprisonment. 720 ILCS 5/12-3.05(e)(1), (h) (West 2016); 730 ILCS 5/5-4.5-25(a) (West 2016). The sentence was appropriate in light of defendant's criminal history, the serious nature of the offense, and the need to deter others. The factual basis presented for the plea agreement indicated that defendant snuck up on the victim and discharged a firearm three times, striking the victim once in the hip. Defendant then ran away. Although the instant offense was defendant's first adult felony conviction, he was only 19 years old at the time of the offense and had four adjudications of juvenile delinquency for felony offenses.

¶ 20 Defendant contends that the fact that the court imposed a sentence that was eight years below the maximum showed that it did not adequately consider his age, rehabilitative potential, and family support. The court explicitly considered defendant's age and familial support, and we may not reduce defendant's sentence merely because we would have weighed these factors differently. See *Stacey*, 193 Ill. 2d at 209. Also, while defendant's young age was indicative of rehabilitative potential, other factors tended to show that defendant lacked rehabilitative

6

potential. Specifically, defendant had four adjudications of juvenile delinquency for felony offenses. Defendant also attempted to avoid responsibility for the offense by falsely accusing Davis of committing the offense. Moreover, "[a] defendant's rehabilitative potential *** is not entitled to greater weight than the seriousness of the offense." *People v. Coleman*, 166 Ill. 2d 247, 261 (1995).

¶ 21     Defendant notes that there was evidence that he struggled with drug addiction, including his statements in the PSI that he used marijuana and ecstasy daily and his mother's statement in the family questionnaire attached to the PSI that she believed he had a drug problem. While the court did not expressly consider defendant's drug use, it indicated that it had considered the PSI. Also, it is unclear from the statements in the PSI and family questionnaire whether defendant struggled with drug addiction or was merely a drug user. However, even assuming that these statements tended to show that defendant was a drug addict, the sentencing court was not required to consider drug addiction as a mitigating factor. See *People v. Smith*, 214 Ill. App. 3d 327, 339-40 (1991).

¶ 22     We note that defendant cites *Miller v. Alabama*, 567 U.S. 460 (2012) and its progeny. These cases do not directly apply to defendant's situation for two reasons: (1) defendant was not under the age of 18 years at the time of the offense, and (2) defendant did not receive a natural or *de facto* sentence of life imprisonment. See *People v. Buffer*, 2019 IL 122327, ¶ 27. Nevertheless, defendant's age and relative lack of maturity were proper sentencing considerations. We find that these factors were adequately considered by the circuit court. See *supra* ¶ 20.

7

¶ 23 Given the facts of this case, we find that the sentence was an appropriate exercise of the court's discretion. We may not reduce defendant's sentence merely because we would have weighed the mitigating factors differently. See *Stacey*, 193 Ill. 2d at 209.

¶ 24 III. CONCLUSION

¶ 25 The judgment of the circuit court of Peoria County is affirmed.

¶ 26 Affirmed.